## FREDERICK v. CALLAHAN.

**Landlord and Tenant:** CONVEYANCE. A lease of land stipulated that the tenant should erect a house upon the premises for which he should, upon the expiration of the lease, be paid a sum to be fixed by arbitration. The landlord, during the existence of the tenancy, sold the land and assigned the lease: *Held*, that the covenant to purchase ran with the land, and was binding upon the grantee.

*Appeal from Clinton Circuit Court.*

### THURSDAY, MARCH 18.

THIS action was brought December 24, 1873, upon the covenants of a lease for three years, of a farm, made March 3, 1870. The clause upon which the breach is assigned is embraced in this paragraph of the lease: "To have and to hold the same with appurtenances unto the said party of the second part, from the 3d day of March, 1870, for and during three years, and up to the first day of March, 1873, at a rent of one-third of all crops raised on said premises, the small grain to be measured at the threshing machine in the half bushel, and to be delivered in the bin; corn to be husked and delivered in the crib. Party of the second part agrees to leave, at the expiration of the lease, thirty acres of fall plowing, done in good season and in good husbandlike manner. Tenant is to keep the fences in good order and repair, landlord furnishing materials. Tenant is not allowed to burn nor sell any straw off from the premises, and agrees to draw all manure out on the land. *Tenant is to build himself a dwelling house at his own expense on such a place as landlord points out. Landlord agrees to buy the building at the expiration of the lease at such a price as three disinterested parties shall fix upon it.* Tenant is to work the farm in a good husbandlike manner, and a failure to do so shall work a forfeiture of the lease.      *      *      *      ."

The plaintiff averred that he made the lease with Joseph Messmer, who then owned the farm; that he took possession as tenant on the third day of March, 1870, and built a house at the

place pointed out by Messmer; cultivated the farm and delivered the rent to him for 1870; that January 13, 1871, Messmer sold the farm to L. P. Adams, subject to the lease, and also assigned the lease to him, and the plaintiff cultivated the farm in 1871, and paid the rent to Adams as landlord; that Adams also sold the farm and assigned the lease to Susan McLaughlin, September 11, 1871; and on September 30, 1871, she also sold the farm and assigned the lease to defendant, Callahan, who thereby became landlord under the terms of the lease, and to whom the plaintiff, upon his demand, paid and delivered the rent for 1872; that during all the time said house was on the land and plaintiff was living in it; that at the expiration of the lease the defendant demanded and received possession of said land and house from this plaintiff, who has fulfilled all his obligations under said lease. That between the first and tenth days of March, 1873, plaintiff notified defendant to choose appraisers to fix the value of said house, and it was agreed between them that the trustees of the township should act as such appraisers, and they did so, and on the last named day made their appraisement in writing, at eighty-five dollars; that thereafter the plaintiff demanded of defendant the said sum, under the covenant in said lease, which the said defendant refused to pay, whereby said covenant was broken, etc.

The defendant demurred to the petition, in substance, because the covenant was a *personal* one, and only bound Messmer, and did not bind the defendant. The court sustained the demurrer. The plaintiff appeals.

*Cotton & Cross*, for appellant.

*W. E. Leffingwell & Bro.*, for appellee.

COLE, J.—The single question presented by this record is, whether the covenant that the " tenant is to build himself a dwelling at his own expense on such place as landlord points out; landlord agrees to buy the building at the expiration of the lease at such a price as three disinterested parties shall

fix upon it," is such a covenant as runs with the land, under the circumstances averred in the petition, so as to bind the grantee of the land and assignee of the lease? We agree, (but not without some hesitation on the part of the writer hereof), in answering this question in the affirmative. Waiving an extended discussion of the general question, as well as a review of the authorities upon it which are confessedly inharmonious, and both confused and confusing, we state briefly some of the reasons leading us to our conclusion.

Under our statute a conveyance of real property, even in fee, need not contain either the words "heirs" or "assigns," in order to pass a perfect title. (Rev., §§ 2208 and 2240, Code, §§ 1929 and 1970)—it is just as effectual for every purpose as if it contained the word "assigns." And "the word 'land' and the phrases 'real estate' and 'real property' include lands, tenements and hereditaments, and all rights thereto, and interests therein, equitable as well as legal." Rev., § 29, sub. 8; Code, § 45, sub. 87. And it is also enacted "that every conveyance of real estate passes all the interest of the grantor therein, unless a contrary interest can be reasonably inferred from the terms used." Rev., § 2209; Code, § 1930. And under our statute, also, all claims and rights are assignable; (Rev., § 1796–7–8; Code, § 2084–5–6;) and a covenant of seizin runs with the land. *Schofield v. The Iowa Homestead Co.*, 32 Iowa, 317; *Barker v. Kuhn*, 38 Iowa, 392. From these and other considerations, the lease in controversy is to be construed the same in all respects as if the words "or assigns" were expressly written therein. The performance of the covenant, on the part of the plaintiff, to build the house upon the land, became beneficial to the reversioner, the defendant, and to no other person. The house was built at the time of the assignment of the lease and the conveyance of the land to the defendant, and the title and right to it passed to the defendant at the expiration of the lease. The covenants respecting the house have direct and especial reference to the land. The defendant recognized his liability by agreeing upon the disinterested persons to fix the value of the house. There is much of wholesome equity in requiring

the defendant to pay for that, the benefit and value of which he alone enjoys.

REVERSED.