JAMES C. WATSON *et al.*

*v.*

FREELAND B. GARDNER *et al.*

*Filed at Ottawa January 25, 1887.*

1. MECHANIC'S LIEN—*commencement of suit—what to be so regarded, as against intervening incumbrancer.* After the filing of a petition to enforce a mechanic's lien against one lot, the owner of such lot executed a deed of trust upon an adjoining half lot, the building being upon both lots, after which the petition was amended so as to embrace the half lot: *Held,* that as against the incumbrancers and subsequent grantees of the owner of the lots, the petition was not to be regarded as filed before the filing of the amendment thereto.

2. SAME—*limitation—by whom the bar of the statute may be invoked—of a purchaser under a prior incumbrance.* A purchaser of property under a deed of trust, and his grantee, will take the place of the creditor secured by the trust deed, and will be entitled to invoke the protection of the limitation provided for in section 28 of the statute relating to liens.

3. And when the enforcement of a mechanic's lien is once barred by the limitation of section 28 of the statute entitled "Liens," the bar is perpetual. The creditor or incumbrancer is as much such after his debt or incumbrance has merged into a title, as he was before.

4. The limitation under that section having once commenced to run, nothing short of the extinguishment of the interest of the party in whose favor it is running will arrest it; and the purchaser of that interest occupies the same position as the original creditor.

5. The lien given by statute in favor of a mechanic or material-man, when it attaches only to an equity of redemption, as, when it is acquired subject to a deed of trust, will be foreclosed by a sale of the premises in pursuance of the power in the trust deed.

6. COVENANT—*whether it runs with the land.* A covenant on the part of the lessor of real estate, in his lease, that at the end of the term he will pay the lessee the appraised value of the improvements placed thereon by the latter, is not one that runs with the land, and is not enforceable against a grantee of the lessor.

7. MERGER—*keeping a mortgage alive—subrogation.* A purchaser of the equity of redemption of mortgaged premises, upon paying the amount due under the mortgage, will be entitled to be subrogated to the rights of the mortgagee as against intervening rights. In such case, equity will treat the incumbrance as still subsisting, and not as merged, so long as it is necessary to do so to protect the rights of the party paying the mortgage debt.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding.

Freeland B. Gardner obtained a lease, from the heirs-at-law of George Manierre, deceased, of lot 1, in block 8, of fractional section 15, addition to Chicago, to run from November 1, A. D. 1871, to November 1, A. D. 1881. The lease contained, among others, this clause: "And at the end of said first five years, to-wit, on the first day of November, A. D. 1876, the said premises shall be valued by three disinterested persons, one to be selected by each party to this lease; and in case said parties can not then agree as to the third person, the two persons selected by the parties to this lease shall select the third one; and the said party of the second part hereby covenants and agrees to pay, as rent for said premises, for the second five years of said term hereby created, to said party of the first part, the sum of six (6) per cent, annually, on the value of said premises, as fixed by the persons selected for that purpose, as above provided, payable in equal quarterly installments during said five years,—said party of the second part, during the whole of said term of ten years, to pay all taxes and assessments, of every kind, levied, assessed or charged on said premises during that term; and in case said parties can not agree for an extension of this lease at the end of said term of ten years, then the buildings and improvements which shall have been erected and made on said premises by the party of the second part, shall be appraised in the same manner as is agreed upon above for the valuation of said premises at the end of five years from this date, and shall be paid for by said party of the first part within sixty (60) days after notice that such appraisement has been made."

The said Freeland B. Gardner also purchased and obtained a deed on the 4th of January, A. D. 1872, conveying the north

half of lot 4 of the same block, and which abuts said lot 1, to him in fee, and on the 15th of January, A. D. 1872, he conveyed the same in trust to Uri Balcom, to secure the payment of an indebtedness of $30,000 to W. C. D. Grannis. Afterwards, in the same year, said Gardner erected a hotel building on said lot 1 and north half of lot 4, which was known as the "Gardner House," and as soon as it was completed he leased it to Fred S. Gould and H. H. Gardner. After this leasing, and about July 1, A. D. 1873, James C. Watson and William H. Morrill, partners, claim to have been directed by said Freeland B. Gardner (though he denies it,) to overhaul and repair the steam-heating apparatus in this house; and between September 1, A. D. 1873, and November 25, A. D. 1873, they claim, pursuant to such direction, to have furnished material and done work to the amount of $2979.40, upon which they have been paid only $805.37. And on the 26th of November, A. D. 1873, said Watson & Morrill filed their petition for a mechanic's lien, on account of such material furnished and work done, in the circuit court of Cook county, making the said Freeland B. Gardner, and Ann H., Edward, Benjamin, George and William R. Manierre, heirs-at-law of George Manierre, deceased, defendants. It was, among other things, alleged in the petition, after stating the leasing of said lot 1 by the heirs-at-law of George Manierre, to Freeland B. Gardner, as above recited, "that July 1, A. D. 1873, petitioners, at Gardner's request, he being the owner of said leasehold, performed work and furnished material *on the building standing on said premises,* and which went into said building, and was accepted by said Gardner," etc., then stating the value or balance due, etc. The prayer is, that a lien be decreed, etc., and "that *said leasehold estate be sold* under decree," etc.

Gardner answered the petition on the 14th of February, A. D. 1874, alleging that prior to the doing of the work and furnishing the materials by the petitioners, he leased the prem-

ises to Fred S. Gould and H. H. Gardner, but that the lease, at the time of the accruing of the debt, was owned by Gould alone, who was then in sole charge, as lessee, of said hotel; denying that he employed petitioners to do the work, and alleging that Gould alone employed and promised to pay them. The Manierres seem to have not been served with process.

On the 19th of April, A. D. 1875, the cause was referred to the master to take evidence, but beyond taking some depositions, in 1875 and 1876, nothing was done in the suit until in A. D. 1880. Meanwhile, on the 10th of March, 1874, said Freeland B. Gardner conveyed said north half of lot 4, and his leasehold interest in said lot 1, to Hugh A. White, in trust, to secure his two promissory notes,—one of $10,000, and the other of $50,000,—due in three years from that date. On the 12th of September, A. D. 1874, said Gardner sold and conveyed said property to A. E. Goodrich, and on the 16th of April, A. D. 1877, Gardner having failed to pay the indebtedness secured by the trust deed to White, White sold and conveyed the premises, pursuant to the power, to A. E. Goodrich, and Goodrich afterwards paid the amount due to Grannis on the trust deed to Balcom. On the 31st of July, A. D. 1880, the heirs-at-law of George Manierre sold and conveyed said lot 1 to said A. E. Goodrich, and on the 30th of March, A. D. 1881, said Goodrich sold and conveyed said lot 1, and north half of lot 4, to Alva Bradley and Alvira Cobb, together with the building thereon. In May, A. D. 1880, a replication was filed to Freeland's answer.

On the 5th of November, A. D. 1881, leave was given the petitioners to amend their petition, by making Alva Bradley and Alvira Cobb defendants, and on the same day they filed their joint and several answer to the petition, alleging that they became the owners of the premises, in fee, on the 30th of March, A. D. 1881, through various *mesne* conveyances from the Manierres; admitting the lease from the Manierres

to Freeland B. Gardner, but alleging that it had expired on the 1st day of November, A. D. 1881, and that the interest or estate upon which the petitioners claimed a lien, then terminated; that they were not made parties to the petition until more than six months after any amount which may have been owing from Gardner to the petitioners for labor or materials, became due, and that the petitioners' lien, if they ever had one, was extinguished. Afterwards, on the 15th of November, A. D. 1881, the petitioners obtained leave, and further amended their petition, by alleging that the lease from the Manierres to Gardner contained a covenant, that if the parties could not agree for an extension of the same at the end of said ten years, then the buildings and improvements thereon should be appraised, as in the lease specified, and be paid for by the lessees within sixty days after notice, quoting then the language of the lease before herein set out. They further allege, by the amendment, the purchase of the north half of lot 4 by Gardner, as before herein stated; that he afterwards built the hotel on said lot 1 and north half of lot 4, and repeat their former allegation, that the materials furnished and work done to repair the steam-heating apparatus therein, were done and furnished at the request of Freeland B. Gardner. Bradley and Cobb filed their joint and several answer to the amended allegations, putting them in issue, on the 11th of April, A. D. 1882, and afterwards, in July, A. D. 1883, (Cobb having, since the filing of said answer, and before that time, died intestate,) said Bradley and the heirs-at-law of Alvira Cobb, who had been substituted as defendants, filed their plea and a further answer to the amended petition, setting up and relying upon the limitation provided by the 28th section of the statute in relation to mechanic's liens, and also the five years' Statute of Limitations, and further reciting the facts as to how they acquired title, as and before herein recited, and denying that Freeland B. Gardner ever employed the petitioners, as alleged. They claim that Goodrich, by his

purchase, and his payments of the amounts due on the trust deeds, became subrogated to the rights of mortgagees under those deeds, and that those rights were transferred to Bradley and Cobb by his deed, and that they are hence, as to the said north half of lot 4, entitled to invoke, which they do, the protection of the limitation provided by the 28th section of the statute in relation to mechanic's liens.

The circuit court, on hearing, decreed in conformity with the prayer of the amended petition. On appeal to the Appellate Court for the First District, that decree was reversed, with directions to the circuit court to dismiss the petition. That ruling is assigned for error, and brings up all the questions considered in the opinion of the court.

Mr. JOHN WOODBRIDGE, for the appellants:

In the following cases liens were allowed on contracts made by others assuming to act for the owner: *Schwartz* v. *Saunders,* 46 Ill. 24; *Anderson* v. *Armstead,* 69 id. 456; *Taylor* v. *Gilsdorf,* 74 id. 359; *Baxter* v. *Hutchings,* 49 id. 118; *Dobschuetz* v. *Holliday,* 82 id. 371; *Weber* v. *Wetherby,* 34 Md. 656; *Gaskill* v. *Tramter,* 3 Cal. 334; *Green* v. *Riddle,* 8 Wheat. 77.

As to purchasers, there was no limitation prior to 1879. Up to this time the limitation clause of the statute had no application to either the principal debtor or a purchaser. *Jennings* v. *Hinkle,* 81 Ill. 185; *Van Pelt* v. *Dunford,* 58 id. 146; *Shaeffer* v. *Weed,* 3 Gilm. 517; *Dunphy* v. *Riddle,* 86 Ill. 28.

The law placing a purchaser upon the same footing, was first in force July 1, 1879. (Laws of 1879, p. 191.) This law is not retrospective. Stat. 1881, chap. 131, sec. 4; *Roth* v. *Eppy,* 80 Ill. 285.

The lien upon a leasehold carries with it the right to the proceeds of an appraisal of the building at the end of the

lease.    Phillips on Mechanic's Liens, sec. 193, p. 327; *Smith* v. *Phelps*, 63 Mo. 585.

Amendments are proper here, because enough of the property of the appellees is certainly liable to pay our claim in full. The introduction of the north half of lot 4 does not increase the amount to be paid.    The value of the building alone is admitted to be $20,000.    *Thomas* v. *Insurance Co.* 108 Ill. 91.

Appellants are not new parties, within the meaning of *Dunphy* v. *Riddle*, 86 Ill. 22.    They are purchasers from the principal defendant *pendente lite*, and succeed to his rights, only. No one ever heard before that a purchaser from a defendant was a new party, at liberty to claim that the Statute of Limitations ran *pendente lite*.

Messrs. COOK & UPTON, for the appellees:

If appellants did the work without regard to the terms of the lease and the agreement between the landlord and their employers, (the tenants,) they must be held to have done it upon the personal responsibility of the latter, and the right to a lien upon their (the tenants') estate in the premises. *McClintock* v. *Creswell*, 67 Pa. 183; *Newell* v. *Haworth*, 66 id. 363; *Sturtevant* v. *Browning*, 33 N. Y. 203.

We insist that the appellees, being the new defendants to the petition by amendment, have the same right to interpose the six months' Statute of Limitations that an incumbrancer would have had, having derived their title through the foreclosure of the deed of trust and sale to Goodrich.    *Dunphy* v. *Riddle*, 86 Ill. 22; *McGraw* v. *Bayard*, 96 id. 146.

The purchaser succeeded to all the rights of the incumbrancer in that respect.    *Lunt* v. *Stephens*, 75 Ill. 507.

The clause in the lease, for payment of the appraised value of improvements, is not a covenant following the land, or enforcible against any one else than the parties to the contract. *Hansen* v. *Meyer*, 81 Ill. 321; *Thompson* v. *Rose*, 8 Cow. 266.

Mr. JUSTICE. SCHOLFIELD delivered the opinion of the Court:

The rulings of the Appellate Court questioned by the argument on behalf of appellants, are, first, that inasmuch as the petition for mechanic's lien, before amendment, only prayed that it be enforced against Freeland B. Gardner's leasehold interest in lot 1, and the building thereon, it can not be regarded as a proceeding pending against lot 4 at ·the time that the mortgage was executed to White, and the several deeds were executed to Goodrich, and by Goodrich to Alva Bradley and Alvira Cobb, and hence, as to those parties, the petition for a mechanic's lien is not to be regarded as filed until November 1, A. D. 1881, the date of filing the amended petition; second, that Goodrich took the place of White, under the deed of trust, and Bradley and Cobb took the place of Goodrich, and now Bradley and the heirs of Cobb are entitled to invoke the protection of the limitation provided by section 28 of the statute in relation to liens, just as White might have invoked it before sale; third, any rights which the petitioners might have had in Gardner's equity of redemption are foreclosed by the sale, pursuant to the power in the trust deed; fourth, that the covenant on the part of the heirs-at-law of George Manierre, deceased, with Freeland B. Gardner, with regard to the valuation of the building and improvements on lot 1, and the payment therefor by the Manierre heirs, is not a covenant running with the land, and it therefore gave him no lien upon the lot of which the petitioners can avail in this suit. *Gardner* v. *Watson,* 18 Bradw. 392.

We think these rulings are sufficiently vindicated in the opinion filed by the Appellate Court, and will only add, we think it is clear, on principle, that when the limitation of section 28 of the statute entitled "Liens," (Rev. Stat. 1874, p. 668,) once bars the prosecution of a lien, the bar is perpetual. The creditor or incumbrancer is, within the meaning of the statute, just as much such after his debt or incum-

brance has merged into a title, as he is before. The statute having once commenced to run, in such a case, there is no authority for holding that anything short of the extinguishment of the interest of the party in whose favor it is running, will arrest it. The principle is too obvious for extended comment, that if this be so, then the purchaser of that interest occupies precisely the same position that the original creditor or lienor did. He takes the rights, and assumed the correlative obligations and duties unchanged.

Goodrich having become the owner of the equity of redemption, upon paying Grannis the amount due him on the Balcom deed of trust, was entitled to be subrogated to the rights of Grannis under that deed. Sheldon on Subrogation, sec. 28, *et seq.;* 1 Jones on Mortgages (2d. ed.) 874. And a court of equity will not treat the incumbrance as merged, so long as it is the interest of Goodrich, and those claiming in his right, that.it shall be subsisting. *Campbell* v. *Carter,* 14 Ill. 286; *Edgerton* v. *Young,* 43 id. 464; *Richardson* v. *Hockenhull,* 85 id. 124. Although, too, Goodrich had a deed to the equity of redemption, he might subsequently obtain and rely upon a deed, (if for any reason it would better protect his rights,) at a sale, upon foreclosure, of White's deed of trust.

The judgment is affirmed.

*Judgment affirmed.*