FRANKLIN LAND, MILL AND WATER COMPANY *vs.* WILLIAM H. CARD, Appellant.

Hancock.    Opinion June 17, 1892.

*Landlord and Tenant. Lease. Holding over.  R. S., c. 73, § 10; c. 94, §§ 1, 2.*

By statute, a tenant under a written lease, who holds over, becomes a tenant at will unless the peculiar stipulations in the lease clothe him with superior rights.

A tenant in possession of land at the expiration of a written lease, who had erected a mill on it that the landlord had agreed to purchase at the expiration of the term, may retain his possession until such purchase shall be performed, but not without, meantime, being chargeable with rent.

ON REPORT.

This was an action of forcible entry and detainer. The writ was dated December 3, 1890, and alleged that "the said defendant at Franklin, in said county of Hancock on the 31st day of October, A. D., 1890, having before that time had lawful and peaceable entry into the lands and tenements of the plaintiff, situated in said Franklin, at the foot of Donnell's Pond and on Alderbrook stream, the former being known as the upper dam and the latter as Card's mill and Card's dam, and whose estate in the premises was determined on the thirtieth day of October, A. D., 1890, then did and still does forcibly and unlawfully refuse to quit the same; although the plaintiff avers that it gave notice in writing to said William H. Card thirty days before the thirtieth day of October, aforesaid, to terminate his estate in the premises." Plea, general issue, with brief statement as follows:

"And for brief statement the said defendant says that, at the time the plaintiff's notice to quit was served upon him, he was not a tenant of that portion of the property described in said notice to quit, as the Upper Dam at the foot of Donnell's pond.

"And he further says that he built the mill described in said notice as Card's Mill, and the dam described in said notice as Card's Dam, under and by virtue of a certain written lease and agreement between him, the defendant, and the plaintiff company, dated January 1st, 1867.

"That he has continued to maintain and operate said Card's mill and Card's dam, since the expiration of said written lease to the service of said notice to quit, in the same manner and under the same conditions as he did during the period mentioned in said lease. That he has been ready to sell said mill and said dam to said plaintiff company at a fair valuation and in accordance with the conditions stated in said written lease, and that he is still ready so to do.

"That he claims to be the owner of said mill and of said dam subject to the terms and conditions of said written lease."

The clause in the lease referred to is as follows :

"At the expiration of this lease said Franklin Land, Mill and Water Company are either to renew the same for another term of years, at the present or a then fair rate, as the respective parties may then agree upon ; or said company are to buy said mill at such price as they, the said parties of the first and second parts, may agree upon, or at such valuation as two disinterested parties may decide upon as fair and equitable. And whenever said Card may or shall relinquish said leased and granted premises, he shall deliver said premises to said company in at least as good condition as they now are, and without any cost or expense whatever to said company."

December 29, 1889, the company gave to Card a lease for one year of its mill and water privileges and dam situated above the Card mill at the foot of Donnell's pond, and also the right to tolls on lumber passing through the dam. This lease also contained these words, "and the right to maintain his own dam and mill on said stream."

Other material facts appear in the opinion.

*C. H. Bartlett*, for plaintiff.

The defendant was a tenant of the Upper Dam at the foot of Donnell's pond, at the time of the service of the notice to quit upon him, September 30, 1890, by holding over after the lease of 1889–90, and by election of the plaintiff. The premises were an entirety and Card could not abandon the upper dam and hold over as to the lower dam and his mill, without the consent of the company and a new contract. The testimony shows that the mill is practically worthless without this upper dam, and the case discloses that the upper dam served as a reservoir dam for this mill. Under such circumstances as these, a conveyance of the mill would have passed an easement in the upper dam as the premises would be considered entire. *Baker* v. *Bessey*, 73 Maine, 472 ; *Perrin* v. *Garfield*, 37 Vt. 304.

A tenant for years who holds over after the expiration of his term without paying rent or otherwise acknowledging a continuance of the tenancy, becomes either a trespasser or a tenant at the option of the landlord. Very slight acts on the part of

the landlord, or a short lapse of time, are sufficient to conclude his election and make the occupant his tenant. But the tenant has no such election; the mere continuance in possession fixes him as tenant. Tay. L. & T. § 22, p. 18, 7th ed. ; *Schuyler* v. *Smith*, 51 N. Y. 309 ; *Conway* v. *Starkweather*, 1 Denio, 113.

The company permitted Card to keep the mill at the lower dam, after January 1, 1890 (and as the premises were indivisible, the upper dam· as well), without bringing any process of forcible entry and detainer within seven days after the lease expired, as it might have done.

The lease of 1867, was in the alternative, to renew or buy. Card made no demand at its expiration for a new lease, or payment for his mill. This was a waiver.

By taking the lease of 1889–90, he then waived any such rights, and the plaintiff had satisfied all covenants of the old lease. *Rutgers* v. *Hunt*, 6 Johns. Ch. 215. The new lease makes no provision in regard to the mill. Even if the plaintiff were bound by the covenants in the old lease, yet the defendant has no defense to this action. 19 Am. and Eng. Enc. of Law, Title Lease, p. 1016, 6, note 5, citing *Speers* v. *Flack*, 34 Mo. 101.

*Wiswell, King and Peters*, for defendant.

The contracting parties understood that Card would not be obliged to quit and deliver up the property at the end of the term as an ordinary lessee is bound to do, but that he secured by the agreement a right which he might relinquish, not one which expired with the term named.

The company was providing a profitable outlet for its property, protected from competition, and Card on his part was laying a foundation for a permanent business for himself. The lessee was to build an expensive structure on the lessor's land which, unless provided against, would become its property. The distinction between the effect of holding over in a case of a covenant of renewal where there is no question between lessor and lessee about the value of improvements, and a case where there is question is this, in the former case a holding over might be considered, and perhaps would be, as a fulfillment or satis-

faction of the covenant; while in the latter case the holding over would not amount to a satisfaction or performance of the covenant, because the question as to the value of the buildings and the respective rights of the lessor and lessee therein are not provided for. *House* v. *Burr*, 24 Barb. 525.

Payment and receipt of rent implies a continuation of the same rights as the parties had under the old lease. *Schuyler* v. *Smith*, 51 N. Y.; *Clark* v. *Howland*, 85 *Id.* 204.

Card's holding over, in this case, could not be considered as a waiver of his right to compensation for the building when the lessor should terminate the lease. There is nothing to show any consideration for such a waiver. He was paying an adequate price for the privilege; indeed, during this holding over the company advanced on his rent.

The lease of 1888–89, did not change Card's rights. It pertains to property and rights other than those covered by the lease of 1867.

HASKELL, J. The plaintiff seeks to eject defendant from certain real estate, held by tenancy at will that was terminated by notice on October 30, 1890. The defendant was in under a lease for one year that expired December 31, 1889. The evidence fails to show a surrender of the possession at the expiration of the term. The defendant thereafterwards, by force of statute, R. S., c. 73, § 10, held as tenant at will, who might be ejected within seven days without notice, but thereafterwards only on thirty days notice to quit. R. S., c. 94, § § 1–2. *Wheeler* v. *Cowan*, 25 Maine, 283; *Kendall* v. *Moore*, 30 Maine, 327; *Lithgow* v. *Moody*, 35 Maine, 214; *Longfellow* v. *Longfellow*, 54 Maine, 240.

Two parcels of real estate were included in the lease, viz., the upper dam on Alderbrook stream at the foot of Donnell's pond, and Card's mill and dam on the stream below. The lease was for one year, at a stipulated rental, and the demise, as to the latter parcel, was "the right to maintain his own dam and mill," meaning the defendant's dam and mill.

Defendant contends that holding over at the expiration of the

lease did not constitute him a tenant at will of "his own dam and mill," inasmuch as he held that under a former lease that gave him the right to perpetual possession, until certain conditions relating to the purchase of his mill should be complied with by the plaintiff.  The court considers this contention to be sound ; and that, if he had held possession under the terms of a former lease, that secured to him, conditionally, the right to continued possession of "his own dam and mill," the terms of the last lease cannot be construed as an abandonment or waiver of his antecedent rights.  The peculiar language of it makes it plain that the parties must have so understood their respective rights.  The defendant, being in possession of "his own mill," procured a lease of the dam above, and stipulated a gross rental for the two properties for a single year ; and the expression of the demise, "the right to maintain his own dam and mill," shows the only effect intended by the lease was to include the ground rent for "his dam and mill" in that stipulated in the lease.  The old lease required the plaintiff to relet or purchase the defendant's improvements on the power.  The last lease cannot fairly be said to be such a re-letting as contemplated by the parties, making reasonable provisions for the defendant's outlay on the property, and not working a forfeiture of it altogether.  The reasoning of *Mosely* v. *Allen*, 138 Mass. 83, is in point.

But it is contended that defendant had no rights in the property, when the new lease was executed, beyond those of a mere tenant at will.  In 1867, the plaintiff let a mill-site to defendant for the term of five years, at an annual rental, upon which to build a mill, with a stipulation that plaintiff, at the expiration of the term, should either "renew the same for another term of years, at the present or then fair rate, as the respective parties may then agree upon ;" or the plaintiff shall "buy said mill at such price as they, the said parties of the first and second parts, may agree upon, or at such valuation as two disinterested parties may decide upon as fair and equitable ;" and whenever said defendant "shall relinquish said leased and granted premises, he shall deliver said premises to 'the plaintiff' in, at least, as good condition as they now are and without any cost or expense whatever to said company."

The effect of this agreement is, that defendant might elect, at the expiration of the term, to have a new lease, or have the plaintiff purchase his mill.  Neither was done ; but the defendant held over, paying the yearly rental until and including 1880, when it was increased fifty dollars a year, which increase defendant paid up to the termination of the new lease, January 1, 1890.  Now it is considered that the defendant lost no rights by reason of the new lease ; so, of course, he lost none by the increase of rent in 1880.  What, then, are the rights of defendant under the lease of 1867 ?  At its expiration did he become a tenant at will, liable to ejectment within seven days without notice, and thereafter on thirty days notice ?  By our statute, a tenant under a written lease, who holds over, becomes a tenant at will, unless the peculiar stipulations in the lease clothe him with superior rights, so as to exempt him from the statute provisions.

The very terms of the lease imply a continued tenancy until the defendant shall be paid his authorized outlay whereby an idle mill-site was transformed into valuable property.  It should be noticed that the lease does not require the estate to be surrendered at the end of the term, but only that, when surrendered, it shall be " in as good condition as they now are," that is, when the lease was made.

The lease authorized the construction of the mill.  That became fixed to the soil and immovable, and gave the tenant a right to require fair indemnity for his outlay at the end of a term, when he would . be left in possession with a claim upon the property.  When that claim should be extinguished his right to possession would cease.  He held a lien for authorized expenditure, and the landlord had a right to redeem.  Their respective rights resembled those of the parties to an equitable mortgage.

In *Scruggs* v. *Railroad,* 108 U. S., 368, the tenant in possession of a hotel that he had built on land of the lessor under a perpetual lease, stipulating, in effect, that the lessor should purchase the hotel at the option of either party, it was decreed, by the Supreme Court of Mississippi, that the lessor should pay

to the tenant the value of the improvements made under the terms of the lease and fixed by the court, and that, upon its payment, the tenant should surrender her possession to the lessor. Upon an attempt by the tenant to enforce the decree by execution, a bill was brought in chancery, afterwards removed to the District Court, from where it went on appeal to the Supreme Court of the United States, to require the tenant, who had become insolvent, to deduct from the amount required to redeem, reasonable ground rent while she had been in possession. The Supreme Court held the relation of the tenant to the lessor to be that of a mortgagee in possession, liable to be dispossessed upon the payment of his debt, but charging him with rents and profits. The terms of that lease were similar enough to the one under consideration to make the same rules of law applicable to both.

The well reasoned case of *Holsman* v. *Abrams*, 2 Duer, 435, squarely holds that a tenant in possession at the expiration of a lease, who had made authorized improvements, that the landlord had engaged to purchase at the expiration of the term, may retain his possession until such purchase shall be performed ; but not without, meantime, being chargeable with rent.

Undoubtedly, cases of this sort are proper matters for the consideration of courts of equity, where specific performance may be required, or the rights of the parties may otherwise be determined as equitable principles may require.

The plaintiff should have,

*Judgment for the upper dam only.*

PETERS, C. J., WALTON, VIRGIN, EMERY and WHITEHOUSE, JJ., concurred.