CASE 96—PETITION EQUITY—MAY 17.

# Gray v. Cornwall's Assignee.

APPEAL FROM JEFFERSON CIRCUIT, CHANCERY DIVISION.

1. IMPROVEMENTS ERECTED BY LESSEE TO BE PURCHASED BY LESSOR AT EXPIRATION OF LEASE—EQUITABLE LIEN.—Where there was a lease of a city lot for a term of ten years, the lessee to erect a building, which at the expiration of the lease was to be valued by referees, and upon the payment of that valuation to the lessee the premises were to be delivered to the lessors, with the further provision that if the lessors should not be able to purchase or find a purchaser, "then it is agreed that the lease shall be continued and extended for the same terms as agreed on for the ten years until such time as they be enabled to purchase at valuation in mode just mentioned, or until some other mutual agreement or settlement shall be made," the lease created an enforceable obligation on the part of the lessors to pay for the improvements and not a mere privilege to do so; and while the clause of the lease continuing its terms after the expiration of the first ten years was intended to give ample time to the lessors to make payment, that time must have some limit, and more than twenty-five years having elapsed without any arbitration or agreement as to the value of the improvements, the lessee, or his assignee, is entitled to enforce his equitable lien for the value of the improvements.

2. SAME.—The lessee having purchased from the lessors a one-half interest in the property, he owns the property jointly with the appellant, who has purchased from the lessors the other half, which he holds subject to the lessee's lien for one-half the value of the improvements; and as each owner has a vested estate in possession and the property is indivisible, the lessee, or his assignee, has the right to have the property sold under section 490 of the Civil Code, and incidentally to make ap-

pellant satisfy his equitable lien for one-half the value of the improvements. But even if the fee is in the lessee to one-half the lot and all the buildings, the appellant owning one-half the ground alone, it can make no difference, the result being the same.

3. BUILDINGS PART OF REALTY.—The buildings, which are substantial five-story brick structures, are to be regarded as a part of the realty. But whether they are personal or real estate is immaterial, the chancellor in either case having jurisdiction to order the sale.

4. THE EQUITABLE MODE OF ARRIVING AT THE VALUE OF THE IMPROVEMENTS is to take their value relative to that of the lot upon which they stand.

5. LIEN FOR IMPROVEMENTS—SALE ORDERED BEFORE FIXING VALUE.—It being evident that a sale must be made in any event, it was not error to order a sale before ascertaining the value of the improvements. The chancellor, when he has the fund in his hands, hearing proof as to the character and condition of the buildings at the date of the sale, will be better able to fix a just basis of value.

PIRTLE, SPEED & TRABUE FOR APPELLANT.

Brief withdrawn.

P. B. MUIR OF COUNSEL FOR APPELLEE.

1. The right of renewal in a lease entitles the lessee to only *one renewal.* Otherwise it may lead to a perpetuity, and this would be illegal, or, in this case, continue during the pleasure of Gray and his heirs and descendants forever. (Morrison v. Rossignol, 5 Cal., 164; Cunningham v. Pattee, 29 Mass., 248.)

2. The improvements became a part of the freehold, and therefore the property of the owner of the fee as soon as made, and Gray, being the owner in fee of an undivided half of the land, is of necessity the owner of one-half the improvements thereon, subject, of course, to a lien for one-half the value of those improvements. (Conover v. Smith, 17 N. J. Eq., 51; Van Rensselaer v. Penniman, 6 Wend., 569; Cutter v. Smith, 2 Wall., 831.)

3. But whether the improvements are part of the freehold or not, a sale must be had under section 490 of the Civil Code. For the improvements were placed there by contract between the parties under whom both appellant and appellee claim, and were, therefore, properly placed there. They are all brick and can not be removed.

To give the right to a sale under section 490, it is sufficient that each of the parties can be fully indemnified and protected in a distribution of the proceeds of sale, and that an equal partition can not be made of the property in kind. (Malone v. Conn, &c., 15 Ky. Law Rep., 421.)

4. Appellant's contention that section 490 of the Civil Code is unconsti-

tutional as to persons *sui juris* must fail. (Kean v. Tilford, 81 Ky.,
600; Gossom v. McFerran, 79 Ky., 238; Kneas' Appeal, 31 Pa. St., 87.)
    Cases explained: Syms, &c., v. Mayor of New York, 105 N. Y.,
157; Ervine's Appeal, 16 Pa. St., 256; Palaret's Appeal, 67 Pa. St., 480 )
5. To constitute a "covenant" to pay for the improvements no set form
    of words is necessary. It is only necessary for the lease to show that
    such was the *intention* of the parties. (Taylor's Landlord and Tenant,
    vol. 1, p. 296, note 1; *Idem*, secs. 246, 247.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The judgment below directed the sale of certain real
estate situated on the northwest corner of Main and
Seventh streets, in the city of Louisville.

The proceeding was had under section 490 of the Civil
Code, that authorizes " a vested estate in real property,
jointly owned by two or more persons, to be sold by order
of a court of equity, where the estate is in possession and
the property can not be divided without materially im-
pairing its value, or the value of the plaintiff's interest
therein."

In or about the year 1865, the then owners in fee of this
realty leased it to a man by the name of Thomas Slevin,
and so much of the lease as applies to the point raised by
counsel for the appellant is as follows:

"This indenture, made and entered into this 11th day
of August, 1865, by and between John Martin, trustee for
Nancy B. Martin and children, said Nancy B., John S.
Martin, and Mary A., his wife, James Martin, John P.
Maher and wife, Mary Mc. (*nee* Martin) of the first part
and Thos. Slevin of the second part, Witnesseth that the
parties of the first part hereby lease unto the party of the
second part for the term of ten years, from the first day
of April, 1866, the following described parcel of ground
in the city of Louisville: beginning at the northwest

corner of Main and Seventh streets, running westwardly and fronting fifty-three feet on Main street, thence at right angles northwardly one hundred and five feet, thence at right angles eastwardly fifty-three feet to Seventh street, thence southwardly with Seventh street to the beginning; on these terms, namely, the two store-rooms now on said ground, occupying about forty-two feet front (equal width back), belonging to said Slevin, survivor of T. E. Slevin, to be let by him to suitable tenants, he defraying the expense of keeping them in usual tenantable condition, and out of the rent received for them he is first to pay all taxes, city, State, etc., and repairs for streets, and to divide the remainder, as it becomes due and is collected by him, into equal halves, he to retain one-half and to pay the other half to said parties of the first part; he agrees to pay at the rate of three hundred dollars per year for the 10 feet $7\frac{1}{5}$ inches, more or less, unimproved ground, being the western part of said parcel, up to such time as he shall build thereon, after which he is to let such improvements, and after paying taxes, etc., divide the net income half and half precisely in same manner as agreed on regarding the two houses named.

" At the expiration of the lease the parties of the first part shall choose a referee, the party of the second part shall choose one also, and these two, when chosen, shall choose a third, who shall value the whole of the improvements on said ground, and upon the payment of said valuation to the said party of the second part, or to his heirs or assignee, the said premises with said improvements shall be delivered into the possession of the parties of the first part. If, however, the parties of the first part shall not be able to purchase or find a purchaser, then it

is agreed that the lease shall be continued and extended for the same terms as agreed on for the ten years, until such time as they be enabled to purchase at valuation in mode just mentioned, or until some other mutual agreement or settlement shall be made."

As will be seen from this lease, it began in April, 1866, and was to run for ten years, at the expiration of which time Slevin was to have pay for the improvements, or *rather their value*, and the lessors (the Martins) were to take possession of the premises. A referee was to be selected by the parties to fix the value, " and if the Martins should be unable to pay for the improvements, or to find a purchaser, then the lease was to be extended and continued for the same terms agreed on for the ten years until such time as they (the Martins) may be enabled to purchase at valuation in mode just mentioned, or until some other mutual agreement or settlement shall be made."

When the lease was executed, a part of the lot of ground had upon it two storehouses, fronting on Main street, and that part of the ground on which no building stood has been or was improved by Slevin, as authorized by the lease, by the erection of a building upon it; so the entire lot is covered by these buildings, and, as suggested by counsel, the buildings standing on the lot when the lease was executed were evidently built by Slevin, as the lessors agreed, by the terms of the lease, to pay for these improvements. Slevin, under the lease, was to rent the property, and after paying all taxes, street improvements, etc., the net proceeds of the rental to be divided between the lessors and the lessee. No settlement or agreement as to the value of the improvements made

by Slevin was ever had between himself and the Martins, and the property has been used and occupied by tenants for nearly twenty-six years and to the date of these proceedings, without any settlement by reference to arbitration or otherwise as to the improvements, but the rents apportioned between the Martins, or their vendees, as the terms of the lease required.

Wm. Cornwall, who owned in fee one undivided half of this lot of ground and all the buildings on the entire realty, made an assignment of his estate to the appellee, the Louisville Trust Company. The assignee, under the assignment, became entitled for creditors to one-half the lot of ground and to the value of the three buildings placed upon the ground by Slevin. The appellant, J. S. Gray, obtained by purchase the fee to the other undivided half of the lot. The title that each asserts is not controverted; so we find, when this action was instituted, that the appellee was entitled to the value of all the improvements and the fee to one undivided half of the ground, and the appellant, the fee to the one-half the ground only. It is conceded the property with the buildings upon it is indivisible, and that, in fact, no division can be made, and a resort has been had to the relief given in such cases by section 490 of the Civil Code. With the buildings off the lot, a division doubtless could be had, but it was never intended that these buildings should be detached from the ground, but, on the contrary, it was designed the buildings should form a part of the realty and pass to the original lessors upon the payment of their value.

The buildings are substantial brick structures, five stories high, and Slevin, under the lease from the Martins, had an equitable lien for the value of his improvements

at the termination of the lease, and could have held possession until he was paid. Both the appellee and the appellant had actual knowledge of the lease and its terms and the manner of the holding by the original lessee, Slevin. Cornwall's assignee stands in the shoes of Slevin and is entitled to all the equities that Slevin had.

The appellant, Gray, disclaims to own any part of the improvements, and, in fact, some of his deeds under which he holds confines in express terms in the grant his title to the ground and not to the buildings, and as to the extent of his interest there seems to be no controversy.

It is alleged, and we must assume the testimony shows (the depositions not being before us), a refusal by the appellant to refer the question of value to a referee, or to make any settlement in regard to the improvements, and that neither the Martins, nor any one for them, have complied with this provision of the lease. The buildings constitute a part of this realty, and the realty is held in fee by the appellant and the appellee. The appellant holds his half subject to the equitable lien for the improvements. The assignee of Cornwall is required to sell his interest for creditors. He has a vested estate in possession with a lien for the improvements. The appellant has a vested estate in fee to the one-half, subject to the lien for the one-half value of the improvements. There is no reversion or remainder interest. The parties own the property jointly, one having a less interest than the other; or rather the appellee has a lien on the appellant's one-half which he may enforce. They have the possession, each receiving rents under the terms of the original lease. If the fee is in the appellee to the one-half of the lot and all the buildings, and the appellant the owner of one-half the

ground only, it can make no difference. It is a vested
estate in both, in possession, and indivisible. Can it be
said that the appellant can retain his fee to the one-half
the ground, receive rents, and demand that the lease shall
continue forever, or the buildings removed from the
premises? It is contended it was a mere privilege on the
part of the lessor to pay for these improvements, with no
obligation to do so that could be enforced in law or equity,
and that all the relief the appellee is entitled to as against
the appellant, or the Martins, is to remain in possession
so long as the lessors fail to pay for the improvements, or
until some mutual agreement for settlement is entered
into between the parties. We do not so construe the con-
tract. It should have a reasonable construction, and the
clause of the lease containing its terms, after the expira-
tion of the first ten years, was to give ample time to the
lessors to make payment. This time must have some
limit—that which is reasonable and contemplated by the
parties—and the period of twenty-five years was certainly
time enough to have enabled these parties to comply with
their obligation.

The sale of this interest by the assignee with a cloud
upon the title and the assertion of a perpetual lease by
the appellant, would result in a sacrifice of the property,
and no such judgment should be rendered.

There is no constitutional impediment to this sale as
ordered or to the proceedings directing it. It orders a
sale of realty that is indivisible and incidentally makes
the vendee of Martin satisfy this equitable lien, and
whether the buildings are personal or real estate is imma-
terial. We are satisfied, however, they constitute a part
of the realty, were erected for that purpose and that the

appellant owns one-half the ground and buildings, subject to the lien. In Kutter v. Smith, 2 Wall., 499, the Supreme Court, through Mr. Justice Miller, in speaking of the legal title to the building as distinct from the lot, said : " The well-settled rule is that such erections as this become a part of the land as' each stone and brick are added to the structure." Here are five-story brick buildings attached to and upon this ground, and they must be treated as a part of the realty on which they stand. The title is, or was, originally in the lessors, subject to the lien of Slevin, but if you make the title to the building distinct from the ground it avails nothing for the appellant, as in either case the chancellor has the jurisdiction to sell it.

It is argued the judgment below should have first ascertained the value of the improvements before ordering a sale of the whole estate. We do not think this would be equitable or just to the appellant. He may be, as is contended, unable to pay for the improvements, and if their value should be ascertained regardless of their relative value to the ground upon which they stand, there might be danger of the appellant losing his fee if then sold to satisfy the value of the buildings.

The sale is ordered, as we understand, with a reservation on the part of the chancellor of determining in what manner the proceeds of sale should be apportioned. The relative value of the buildings to that of the lot upon which they stand would, in our opinion, be the equitable mode of adjustment. The Martins have no longer any interest in this property. The title is in the appellee, as assignee, and in the appellant. They are each required to discharge one-half the lien for the improvements. The entire property is sold and the chancellor is called upon

Gray v. Cornwall's Assignee.

to apportion the proceeds between the two vendees. It would be inequitable to take from either his fee to pay for his improvements, and the chancellor will doubtless be careful to protect all parties in interest in his apportionment. When you estimate the net rental value of the entire property and capitalize it at say '5 per cent, the result being the entire value, and then fix a value on the realty, and the difference between the value of the land and that of the whole being the value of the improvements, may, in some cases, be the proper mode of adjustment, and yet the location of the property will often be such as to cause a high rental value on a very indifferent building.

The chancellor, when he has the funds in his hands, hearing proof as to the character and condition of the buildings *at the date* of the sale, will be better able to fix a just basis of value than to fix the value of the improvements before the sale, and it being evident that a sale must be made in any event, we perceive no reason for anticipating the danger apprehended by counsel of a sale before the value of the improvements is ascertained.

The judgment below is affirmed.