## MASSACHUSETTS MUT. LIFE INS. CO. v. JECKELL et al.

### No. 8756.

Circuit Court of Appeals, Sixth Circuit.

Dec. 12, 1941.

340

C. J. Hoyt, of Youngstown, Ohio (Hammond, Hoyt & Rand, of Youngstown, Ohio, on the brief), for appellant.

Frank H. Fisher, of Youngstown, Ohio (Doyle & Fisher, of Youngstown, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

In proceedings brought by the Massachusetts Mutual Life Insurance Company to foreclose a mortgage, Elizabeth M. Backus, a defendant, was awarded a decree on her claim for an equitable lien; and the insurance company appeals.

The controversy arises from the following circumstances: In 1919, Guttridge and Rand were owners of a parcel of real estate in Youngstown, Ohio, which they leased to Ephraim M. Braden. By the terms of the agreement, the lessee covenanted to erect buildings for his own use, and the lessors agreed to purchase such buildings from the lessee on the termination of the lease, or any of its extensions, at a valuation to be determined in accordance with an agreed method. The lease was recorded and Mr. Braden erected the buildings.

Several transactions subsequently took place, which, although not concerned directly with the mortgage here sought to be foreclosed, nevertheless, illuminate the issue. Mr. Braden mortgaged his leasehold estate and the buildings to The Dollar Savings and Trust Company; and the lessors mortgaged their real estate to the City Trust and Savings Bank of Youngstown, as trustee, expressly "excepting and reserving therefrom the buildings erected by Ephraim M. Braden." Thereafter, the owners and lessors conveyed their interest in the real estate to Charles and William Jeckell and, in the deed of conveyance, recited that it was subject to the recorded Braden lease

and also to the mortgage to The Dollar Savings and Trust Company, which Mr. Braden had executed. Subsequently, the lessors' mortgage to the City Trust and Savings Bank was paid and discharged, and the Jeckells executed a new mortgage to the Massachusetts Mutual Life Insurance Company, which is the instrument here sought to be foreclosed. The insurance company also procured a waiver of priority of the Braden mortgage from The Dollar Savings and Trust Company.

Through the death of Mr. Braden, his widow, now Elizabeth Backus, succeeded to his rights. Extensions of the lease were agreed upon during the lifetime of Mr. Braden, as well as afterward during the period when his wife had succeeded to his rights. Finally, in December, 1935, defendant Backus notified the Jeckells that she had elected to terminate, in accordance with the terms of the agreement; and appraisers were appointed, who filed a report of the value of the buildings in order to fix the purchase price which the Jeckells were to pay in conformity to the terms of the lease. Before this payment was made to Mrs. Backus, the insurance company filed a bill to foreclose its mortgage. Appellee Backus contends that by virtue of the terms of the lease, and the fact that one of the principal considerations therefor was the erection of the buildings at the expense of the lessee, together with the obligation of the lessors to purchase the buildings at the expiration of the lease, she is entitled to an equitable lien paramount to appellant's mortgage. It is the claim of the insurance company that the provisions in the lease embodied merely a promise on the part of the lessors therein to pay an amount to be agreed upon, and do not give rise to an equitable lien.

■ Determination of the case, therefore, depends upon the construction to be given the lease; and, if it be considered that the language is not certain, involves the intention of the parties as evidenced by such of their dealings as came within the notice of appellant mortgagee.

The lease provided that in case of the death of the lessee during the term of the lease, or its extension, his administrator, upon six months' notice in writing, could terminate the lease, "and the lessors agree to purchase the buildings constructed upon these leased premises at a proper valuation, the proper valuation of said buildings to be determined by the parties, or their legal representatives, by mutual agreement, or if they fail to agree" by arbitration.

It was further stipulated that, at the termination of the lease "the lessors agree to purchase the building or buildings constructed by the lessee, upon notice given, said notice to be given in the manner, and the determination of the value of the building to be determined in the same manner, as hereinbefore set forth, in the event of the decease of the lessee"; and that if at any time the lessee became in arrears for rent for a period of sixty days after notice given to him, or upon breach of any of the other covenants by the lessee, the lessors might at any time after such notice and the sixty day period, "enter upon the premises and thenceforth from that time, this lease shall become void, providing the lessors purchase the building constructed by the lessee, the value of said building to be determined in the manner hereinbefore set forth."

When the Jeckells executed the mortgage to the insurance company, the latter had notice of this recorded lease. It had further knowledge that the deed, through which the Jeckells had become owners, expressly recited that the property was subject to the terms of the lease—as well as to the mortgage previously given by Mr. Braden. Furthermore, it had notice that the Jeckells' predecessor in title had given a real estate mortgage, expressly excepting therefrom the buildings which had been erected by Mr. Braden. That Braden was considered by all parties to be the owner of the buildings, is indicated by the recognition of this mortgage on the part of the Jeckells in accepting their deed subject thereto, and by the conduct of the insurance company in procuring a waiver of priority from Braden's mortgagee.

■ With regard to the claim of appellant that the lease embodied only a promise to pay money, and did not give a lien on the premises to secure the purchase price of the buildings, it is urged that the right of the lessors to a return of possession did not depend upon their previous performance of the covenant to purchase the buildings from the lessee. With this contention, we do not agree. The above-mentioned provisions of the lease clearly disclose the intention that, in spite of any defaults by the lessee in the performance of the agreement, the lessors could enter upon the premises only by purchasing the buildings. Possession and domain of the lessors depended upon their

prior performance of the contract to purchase.

Further elucidation of any supposed obscurity in the meaning of the lease seems unnecessary, but it may be observed that, in the covenant that the lessors would purchase the buildings, there is implied, in the circumstances of this case, a title thereto in the lessee, as a party could not purchase his own property. It may be granted that, in some instances, the word, "purchase," is to be construed as merely a promise to pay the value of certain property. See Kutter v. Smith, 2 Wall. 491, 17 L.Ed. 830. But in this case, where the lessee retains the right of possession until the required payment by the lessors, "purchase" must be held to mean payment for the exchange of property rights therein; and, from the terms of the lease, there is an implication of general ownership and title to the buildings in the lessee. In this regard, it is not necessary to determine nice questions as to the nature of title to buildings erected by one party upon the lands of another. It is sufficient to say that, from the foregoing, it clearly appears that the original lessors and lessee intended to create a charge upon the real estate in favor of the lessee.

If precedents are available, the question is to be decided in accordance with Ohio law. Wolf v. Eblen, 6 Cir., 101 F.2d 469; Shanks v. Hardin, 6 Cir., 101 F.2d 177; Erie Railroad Co. v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487. Many of the cases cited by appellant are to the effect that covenants by a lessee to erect buildings under an agreement of purchase by a lessor, do not run with the land; are not binding upon the lessor's assignee; and the lessee cannot maintain possession to enforce repayment.

In arriving at a determination of the issue and in distinguishing the principles underlying the many adjudications, the subject of a lessee's lien may well be considered in the light of its suggestive historical background. When Henry VIII seized the English monasteries and convents, together with their schools and hospitals, and parcelled them out as gifts to his friends, these properties were subject to many covenants, and it was sought to give to the grantees of the king, the same benefits that the prior owners had, as well as to conserve the rights of lessees. Therefore, Stat. 32, Henry VIII, C. 34, purported to make all covenants run with the land. But in Spencer's Case, 5 Coke 16, 1 Smith's Leading Cases 55, 11th Ed., the statute was limited, and it was held that only those covenants ran with the land, which directly pertained to it rather than those of a minor nature, which were merely collateral, and personal, to the lessor; and the court further ruled that a covenant to erect a building, and the corresponding covenant to pay for it, could not run with the land for the reason that the building was not yet in esse. Nevertheless, it was concluded that such covenant would run if, in the lease, the lessor had also specifically covenanted for his assignees; and this decision has apparently been followed by a number of authorities cited by appellant. Tallman v. Coffin, 4 N. Y. 134; Hansen v. Meyer, 81 Ill. 321, 25 Am.Rep. 282; Watson v. Gardner, 119 Ill. 312, 10 N.E. 192; Bream v. Dickerson, 2 Humph. 126, 21 Tenn. 126. The same rule is announced by other jurisdictions which follow adjudications based upon Spencer's Case. Miami Co-op. Mining Co. v. Cherokee Coal Co., 96 W.Va. 11, 122 S.E. 286, 35 A.L.R. 514; Gardner v. Samuels, 116 Cal. 84, 47 P. 935, 58 Am.St.Rep. 135; Hite v. Parks, 2 Tenn.Ch. 373. Certain cases cited by appellant are to the effect that, in the absence of express or clearly implied provisions for a lien, the lessor's liability is for a money judgment only. Taylor v. Baldwin, 10 Barb., N.Y., 582; New York Dyeing & Printing Establishment v. De-Westenberg, 46 Hun,N.Y., 281; Whitlock v. Duffield, 2 Edw.Ch.,N.Y., 366; Daniel Holding Corp. v. Two Thirty Four W. Forty Second St. Corp., 255 App.Div. 8, 5 N.Y.S.2d 391. However, in the last-named case, where a lessor agreed to purchase buildings erected by a lessee at the termination of a lease, it was held that this was a covenant running with the land, but it was further remarked that since the lessee had not reserved the right of possession until the improvement was paid for, he would have no lien, for the reason that, in such a case, the lessors had merely covenanted to pay for the building.

On the other hand, authorities hold that a lessee in such a case is entitled to a lien, although "assignees" are not expressly included in the lease. Frederick v. Callahan, 40 Iowa 311; Ecke v. Fetzer, 65 Wis. 55, 26 N.W. 266; Purvis v. Shuman, 273 Ill. 286, 112 N.E. 679, L.R.A.1917A, 121, Ann.Cas. 1918D, 1175. A lien is sustained even where surrender of the premises to the lessor is not expressly conditioned on payment for the improvements. Franklin Land, Mill

& Water Co. v. Card, 84 Me. 528, 24 A. 960; Hopkins v. Gilman, 22 Wis. 476; and many authorities impress a lien ex aequo et bono, in the given situation, without a holding that the covenant runs with the land. Copper v. Wells, 1 N.J.Eq. 10; Berry v. Van Winkle, 2 N.J.Eq. 269; Conover v. Smith, 17 N.J.Eq. 51, 86 Am.Dec. 247; Spielmann v. Kliest, 36 N.J.Eq. 199; Mullen v. Pugh, 16 Ind.App. 337, 45 N.E. 347; Haynes v. Union Inv. Co., 35 Neb. 766, 53 N.W. 979; Gray v. Cornwall's Assignee, 95 Ky. 566, 26 S.W. 1018.

 In Ohio, Stat. 32 Hen. VIII, C. 34, was not adopted, as it was in many states. Instead, the assignee of a lessor or lessee was entitled to sue on covenants by reason of the statute authorizing suits by the real party in interest; and it was held that a covenant ran with the land if it were so intended and if it sustained the estate and the enjoyment of it, resulting thereby in benefit both to the lessor and the lessee. Masury v. Southworth, 9 OhioSt. 340. See Railway Co. v. Bosworth, 46 OhioSt. 81, 18 N.E. 533.

 From the foregoing it is clear that under Ohio law, where a covenant benefiting the lessor and lessee, and sustaining the estate, runs with the land, if so intended by the parties, a lessee has a right of lien under such covenant. See Klaustermeyer v. Cleveland Trust Co., 89 OhioSt. 142, 105 N.E. 278; and in equity the covenant will be held binding on a purchaser taking the estate with notice. Dixon v. Van Sweringen Co., 121 OhioSt. 56, 71, 166 N.E. 887. In the instant case, the covenant in question obviously resulted in benefit to the parties, and sustained the estate and the enjoyment of it. There was no express intention that the covenant would run with the land; but we are of the opinion that where it appears that the lessee has the right to retain possession of the premises until the improvements are paid for, there is an implied agreement that he is to hold the property as security therefor, and that a court of equity will decree a lien in his favor for this purpose.

 The agreement of the lessors to purchase the buildings erected by Mr. Braden on their real estate, prior to their right to enter upon possession thereof, was a specific charge upon their interest therein. See Union Trust Co. v. Townshend, 4 Cir., 101 F.2d 903. It was given for the purpose of securing reimbursement to the lessee; and the lessee was given the right to retain possession of the real estate until such payment. "Wherever it affirmatively appears from the contract itself that the lessee is given the right to retain possession of the premises until the lessor compensates him for the value of his improvements, the very object of such retention is to give him an additional security for his protection." Swift v. Sheehy, C.C., 88 F. 924, 927. Without the provision in question, the lease would not have been executed. "In the absence of an express contract, a lien based upon the fundamental maxims of equity may be implied and declared by a court of equity out of general considerations of right and justice as applied to the relationship of the parties and the circumstances of their dealing. One may by manifest intent and agreement create a security for the discharge of his obligation * * *." Cleveland Clinic Foundation v. Humphrys, 6 Cir., 97 F.2d 849, 856, 121 A.L.R. 163. The spirit, as well as the letter of the covenant, is to be attended to, and by necessary implication, it follows that it was the purpose and intention of the original owners and Mr. Braden to create a charge in his favor on the premises. Walker v. Brown, 165 U.S. 654, 17 S.Ct. 453, 41 L.Ed. 865. Under these circumstances, where there is such an intention, courts of equity will declare and enforce an equitable lien.

Cases cited by appellant to sustain the contention that the lessors' agreement to purchase was only a promise to pay money, rather than a covenant running with the land, may be distinguished on the ground that, here, the lessors had no right of entry until payment to the lessee. Furthermore, it is to be observed that the purchase agreement in this case was not a secret lien or reservation but was expressly set forth in an instrument, of which appellant had notice.

The decree of the District Court, imposing an equitable lien in favor of the appellee, and providing for its enforcement, is affirmed.