TALLMAN *vs.* COFFIN.

A covenant in a lease which relates to a thing not *in esse*, but to be done upon land, it seems, does not run with the land and bind the assignee, unless he be named in the covenant.

Where a lease for ten years contained a covenant of renewal for ten years longer if the parties could agree on the rent, and the lessor covenanted, in case they did not so agree, to pay for improvements which the lessee should place upon the premises, and the lessee covenanted in the like case that at the end of the term, "*upon the lessor's paying for the improvements as aforesaid*," he would peaceably surrender the possession of the premises to the lessor and his assigns; *held*, that the lessor's right to demand possession at the expiration of the term was not qualified by the obligation to pay for the improvements, and therefore, that his assignee (there being no renewal of the lease) could recover in ejectment, although the improve-

Tallman *v.* Coffin.

ments were not paid for. The words "upon the lessee's paying, &c." did not constitute a *condition precedent* to the lessor's right to have possession after the lease had expired.

EJECTMENT, brought in October, 1847, by George F. [135] Tallman against Alexander J. Coffin, to recover certain premises situated in Poughkeepsie, Dutchess county. On the trial in the supreme court in October, 1848, the jury found a special verdict stating the case as follows :

On the 1st of May, 1836, the Poughkeepsie Silk Company, then being the owners of the premises, leased them for the term of ten years to Gideon P. Hewitt, at an annual rent of $300. The lease contained a covenant for renewal for ten years longer, provided the parties could agree upon the rent; and in case the parties could not so agree, then it was mutually covenanted that the lessors should purchase from the lessee all improvements which during the term the latter should place and leave upon the premises, the value thereof to be appraised by three disin terested persons, one to be chosen by each of the parties, and the two thus selected to appoint the third. The lessee covenanted that if at the expiration of the term, the parties should fail to agree upon the rent for the further term of ten years, then, " upon the lessor's paying for the improvement as aforesaid," he would quietly and peaceably surrender the possession to the lessors, their successors or assigns. In May, 1841, Hewitt assigned this lease to the defendant, and the assignment was duly recorded. At the commencement of the suit, the defendant was in possession under the lease and assignment.

On the 18th of August, 1838, the Poughkeepsie Silk Company mortgaged the premises to the American Life Insurance and Trust Company for $60,000. The mortgage was duly recorded, and afterwards, in November, 1842, was assigned to William Bard and William S. Wetmore, who foreclosed the same by suit in chancery, and in March, 1847, the premises were sold by one of the masters of that court to the plaintiff, who received from the master the usual conveyance therefor. Neither the lessee, Hewitt, nor the defendant, his assignee, was made a party to the foreclosure. The lease in question was

never recorded, but the mortgagees had notice of it before taking the mortgage. At the time of the plaintiff's purchase at the master's sale, he also had notice of the lease.

[136] After the execution of the lease, Hewitt, the lessee, entered into possession and erected buildings on the premises. The defendant after the assignment to him paid the rent to the termination of the lease, and informed the president of the silk company, and also the plaintiff in this cause, that he wanted the buildings appraised, and notified them of the appraisers selected by him according to the provision of the lease; but no appraisal was ever made. The plaintiff, before commencing the suit, demanded possession from the defendant, but the latter refused to surrender unless the plaintiff should comply with the conditions of the lease.

The supreme court sitting in the second district, gave judgment for the defendant upon the special verdict setting forth these facts. The plaintiff appealed to this court.

*N. Hill, Jr.* for appellant.

*C. Swan,* for respondent.

TAYLOR, J. Certain principles defining what covenants run with the land, have been adjudged and fully established ever since the time of Lord Coke. Where the covenant relates to a thing not *in esse,* but to be done upon the land demised, the assignee is bound, if *named.* (*Spencer's case,* 5 *Rep.* 16; *Smith's Leading Cases,* I, 22; *Roscoe on Actions for Real Property,* 438.) To carry a personal obligation over to the assignee, he must, in all cases, where something is to be done *de novo,* be expressly named. (*Bally* v. *Wells, Wilmot's Cases,* 345; 3 *Wils.* 27, 28.) If the covenant be annexed to a thing not *in esse* before, but *de novo* to be erected on the thing, as to set up a new house, and the like; in this case it will not bind the assignees unless they be named in the covenant. (*Shep. Touch.* 179; *Thompson* v. *Roe,* 8 *Cowen,* 266, 269.) On this point there is no doubt; and the supposed difficulty in the case arises from an ambiguity in

Tallman *v.* Coffin.

the lease; some of the covenants contained in it running to the assignees, and others omitting them, of which last is that [137] relating to the purchase of the buildings erected on the demised premises.

In the case of *Demarest* v. *Willard*, (8 *Cowen*, 206,) the suit was brought by the assignee of the covenant by lessee to pay rent; and the court decided that he could not maintain the action for arrears of rent. In *Lammetti* v. *Anderson*, (6 *Cowen*, 302,) the assigns of the lessor and lessee are both expressly named in the covenant. In *Norman* v. *Wells*, (17 *Wend.* 138,) Judge Cowen, referring to the particular covenant in the lease for breach of which the suit was brought, says, "the covenant enjoys a position most favorable for an assignable character. It is between the lessor and the lessee, and so the requisite privity arises, if it be susceptible of privity. It has express words for it as to the lessee and his assigns." The case of *Willard* v. *Tallman*, (2 *Hill*, 274,) went off on demurrer, the declaration being defective. In *Allen* v. *Culver*, (3 *Denio*, 285,) the action was covenant for non-payment of rent, and for breach of covenant in the lease, brought by the grantees of the reversion against the defendant, who by a separate instrument became surety for the lessee. There was no question in that case, but that the plaintiffs as assignees of the lessor and grantees of the reversion were entitled to recover against the lessee. Several familiar instances of covenant running with the estate in the land are quoted and approved, but none bearing upon the question before us. In *Cook* v. *The Champlain Transportation Company*, (1 *Denio*, 103,) although the question whether the covenant run with the land and bound the assignees, was raised, there was no decision of it, but the case turned entirely upon a different point. These are the strongest cases relied on by the respondent's counsel, to show that this covenant runs with the land. I am not able to see that either of them, in any way varies the doctrine established in Spencer's case, of which it has been remarked, all subsequent decisions are but commentaries. This, therefore, is not a covenant running with the land.

The clause inserted, by way of parenthesis, in the covenant

of the lessee to surrender, "upon the lessor's paying for the improvements," is not a condition precedent, controlling the [138] covenant. The words commonly used to create a condition are, "upon condition," or "provided always," and such like. (*Litt.* 328, 329.) A proviso is sometimes considered a condition. But a lease of land "paying rent," is no condition. (2 *Show.* 202.) In *Hays* v. *Bickerstoff*, (2 *Mod.* 35,) the lessor covenanted that the lessee "paying the rent and performing the covenants on his part, should quietly enjoy." The question was, whether the lessor's covenant for quiet enjoyment was conditional, and it was adjudged not. It was said by counsel *arguendo*, and apparently with the approbation of the court, that *paying* and *yielding*, were never considered a condition, nor was an entry ever known for non-payment of rent upon these words alone: and that there was no difference between these words and "paying" and "performing." (*Jackson* v. *McLallen*, 8 *Cowen*, 296.) Words such as are contained in this parenthesis, have never been adjudged a condition; and to make them such, other words defining the meaning, and leaving no doubt of the intention of the parties, must be added.

I think, however, that a careful examination of the terms of the lease itself, irrespective of these points of adjudged law, will leave no room for doubt of the meaning and intention of the parties.

The first and general clause of the lease lets to the party of the second part, his heirs and assigns, the premises for the full term of *ten years*. By the second clause, the parties of the first part covenant, that *after* the term of *ten* years shall be complete and ended, the party of the second part shall have the privilege and refusal of again leasing and occupying, for the further term of ten years, provided the parties shall agree upon the rent; thus clearly implying, that further occupancy depended upon mutual agreement. By the third clause, the lessee agrees to pay rent during the demised term. In the last clause, the lessors covenant for the quiet and peaceable possession of the *lessee* for the term of *ten* years and no longer. By the clause preceding the last, which gives rise to this suit; it is covenanted by

Tallman *v.* Coffin.

the parties mutually, that if " *after the term of ten years shall be ended,*" the parties shall not be able to fix and determine the amount of rent to be paid by the lessee, for the further [139] term of ten years, then the lessors bind themselves, their successors and assigns, to *purchase* and *receive* of the lessee, all improvements placed on the premises, by the lessee, during the said term; the value to be ascertained in the manner therein specified.

This is the end of the covenant by the lessor; but the lessee goes on and further covenants, that if the parties shall not be able to agree upon the rent for a further term of *ten* years, the lessee will quietly surrender the possession.

The purport of all these provisions is, that the lessee shall enjoy quiet possession for *ten years*, and no more. At which time, he was bound, without any formal covenant to that effect, to surrender the premises. But another clause provides, that if *after the expiration of the ten years*, and of course, after the premises have been, or should have been surrendered, the parties shall not be able to agree upon the rent for other ten years, then the lessor covenants upon stipulated terms, to purchase the improvements by paying the value therefor. In the midst of a covenant on the part of the lessee to surrender possession, which he was legally bound to do, without it, is inserted an independent clause, " upon the lessor's paying for the improvements" aforesaid, the right to receive which payment, could not arise by the very terms of the lease, until after such surrender should have been made, and could not qualify that covenant. But if this limitation had been more distinct and positive, instead of reaching hardly to the substance of a negative pregnant, it would not avail to control the other covenants in the lease. Several and distinct covenants shall not be restrained the one by the other. (*Litt.* 185; *Com. Dig. Cov. D.* 2; 2 *Vent.* 128; 3 *Lev.* 265.) There is no provision in any of the covenants for a possession beyond ten years, except by mutual consent. The judgment must be reversed, and judgment rendered for the plaintiff on the special verdict.

Ordered accordingly.