ELIZABETH BECK v. BIRDSALL & FRANTZ.

LANDLORD AND TENANT; *Payment of Rent in Advance, Gives no Lien on Leased Premises.* Where a tenant, under a written lease, pays rent in advance for certain real estate by making improvements thereon, and is to occupy the premises until the rent shall equal the cost of the improvements, and fails to take advantage of the statutory enactment relating to liens for mechanics and others, and no express lien is created by the lease, and the tenant is wrongfully evicted by his landlord before the expiration of the time for which the rent has thus been received, the tenant has no lien for the rent so paid in advance on the leased real estate which can be enforced by a foreclosure and sale of the premises.

*Error from Lyon District Court.*

THE district court, at the March Term 1876, gave judgment in favor M. *Birdsall* and *J. W. Frantz*, plaintiffs, and defendant *Beck* brings the case here. The facts fully appear in the opinion.

*Ruggles, Scott & Lynn*, for plaintiff in error.

*Gillett & Forde*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: Birdsall & Frantz, on June 14th 1870, Statement of made and executed with Paul Beck, the husband facts. of Elizabeth Beck, a written contract, or lease, of which the following is a copy:

"This article of agreement, made this 14th of June 1870, by and between Paul Beck, of the first part, and Marshall Birdsall and J. W. Frantz, of the second part, witnesseth: That said parties of the second part, for and in consideration of the matters and things hereinafter mentioned, agree to erect on lots Nos. 73 and 75 on Mechanics street, in the late town, now city of Emporia, Lyon county, Kansas, a wooden building, 40 feet long north-and-south, by 20 feet wide east-and-west, fronting on Fifth avenue; said building to immediately join the Buckeye House on the east, to be two stories high, each story to be of the same height as the corresponding ones of the Buckeye House, said building to be placed on a good stone foundation; the studding are to be sixteen inches apart, the weather boarding to be one foot wide and one inch thick, and to be joined by an inch groove; to be plastered or ceiled on the inside, at the option of the parties of the second part; the flue of said building to be made of brick, and to commence at least 12 inches below the second floor. And the said party of the first part, in consideration of the faithful performance of the stipulations hereinbefore mentioned, agrees that the said parties of the second part shall have the use of the said building and the Buckeye House from the time the materials for said building are on said premises until the first day of October 1871, at the annual rent of six hundred dollars, and from the first day of October 1871, thereafter, at a rent to be agreed upon between

the parties, until said rent shall amount to the costs of the building. If the rent, after the first day of October 1871, cannot be agreed upon between the parties, it shall be left to three disinterested business men of Emporia, and whatever rent they or any two of them shall agree upon, that rent shall be paid; and in the event it is left to third parties, they are to fix the rent for the old building (Buckeye House) only, it being a part of this agreement that no rent shall be paid upon the new building until the rent of the old* building amounts to the cost of the new, after which it is to be considered as belonging to the party of the first part, and the parties of the second part are thereafter to have the use of said two buildings so long as they may desire to use them for a hotel, the rent to be determined in the same manner for the two buildings as above stipulated for the one after the first day of October 1871.

"In order that there may be no misunderstanding concerning the cost of said building, the parties of the second part agree to furnish to the said party of the first part all the bills of the carpenters, lumber-dealers, masons, painters, and all others who may furnish material for said building or aid in the construction of the same.

"It is further agreed that if the said party of the second part cut any doors or windows in the walls of the Buckeye House, they will fill them up with same material that came therefrom, and leave it in all respects as they found it, provided the said party of the first part so desires; and in no case shall there be more than two doors cut through said walls. And it is further agreed that while said parties occupy said premises there shall not be more than one stove used in the building hereby agreed to be built; and in all respects are to use said premises in a careful and husband-like manner, and shall be responsible for all waste, natural wear and tear, damages by fire, and inevitable accidents excepted.

"Witness our hands at Emporia, the day and year first above written."

Under the lease, Birdsall and Frantz went into possession, and fully completed the new building according to the terms of the contract. Paul Beck had suffered the premises to be sold for taxes prior to the date of this contract, to-wit, at the May sale of taxes of 1867, and P. B. Plumb had bid off the property described in the lease, and

had obtained tax deeds to himself on the 10th of May 1870. On May 6th 1872, said Plumb commenced a suit against Birdsall, Frantz, and Paul Beck to recover, under his tax deeds, the possession of the premises. Paul Beck, wishing to redeem the premises from such tax deeds and tax liens, procured, through the advances of money by one Henry Wright and in the name of said Wright, a quitclaim deed of the premises; but the suit of ejectment was continued in the court in the name of Plumb, after the transfer of his interest, at the instance of said Wright acting in collusion with Paul Beck. Birdsall and Frantz failed to defend in the action because they were informed by Paul Beck that the case was settled. On the 5th of March 1873 judgment was rendered in favor of Plumb in the ejectment suit, and ten days afterward Birdsall and Frantz were evicted from the premises under the judgment. Wright then took possession of the premises, and remained therein to November 17th 1875, when he had a settlement with said Paul Beck, and Wright, at the instance of Paul Beck, executed a quitclaim deed of the premises to the plaintiff in error, Elizabeth Beck, without any consideration from her, and she having full knowledge of the transactions of her husband in the matter. Thereupon Paul Beck and wife took actual possession of the premises, and claimed to occupy them as a homestead. At the time Birdsall and Frantz were evicted there was unpaid, for improvements made by them on the premises, $905.54; or, to be more accurate, at the time of the eviction they were entitled to the continued possession of the premises under the lease, until the rental of the premises amounted, after said date, to $905.54. Paul Beck's connection with the fraudulent judgment in ejectment, and his participation through Wright in the wrongful eviction of his tenants, were not discovered by Birdsall and Frantz until after November 17th 1875; and in January following they commenced their action in the court below to have the balance of the expenses of the improvements remaining unpaid at the time of their eviction decreed a lien upon the leased

36—19 KAS.

premises, and the premises sold to satisfy the same. The case was tried to the court without a jury, and conclusions of fact were found substantially conforming to the foregoing statement, and thereon the court held that the defendants in error, by reason of the said written contract, had a valid and subsisting lien upon that part of the premises described as follows, 105 feet off from the west end of lots Nos. 73 and 75, on Mechanics street, for the sum of $905.54, together with interest, amounting in the aggregate to $1,095.63, and were entitled to a decree of foreclosure of the lien and a sale of the premises to pay the same.

Upon consideration of the arguments *pro* and *con*, and construing the written agreement, we can only interpret it as a lease, requiring and providing that the rent is to be paid in improvements on the premises. No other relation is created by the written instrument between the parties thereto than landlord and tenants. That the rent is to be paid in work, labor, and materials, in the construction of a wooden building on the lots, instead of money, does not change the character of the lease, excepting as between the parties. Such tenants were entitled to the actual possession of the real estate until the rents equaled the costs of the improvements. With this view, the only question that is necessary for us to consider is, whether Birdsall and Frantz, having taken possession of the premises under the lease, and while thus occupying the same, having made improvements thereon to be paid for in the rents of the premises, were entitled to a lien on the real estate for the cost of the improvements, after having been wrongfully evicted by their landlord before the rents amounted to the cost of the improvements. No lien is created by express terms in the lease; no attempt is made to support a lien upon the statutory enactment relating to mechanics and materialmen, or upon the provisions of the law favoring occupying claimants. But it is urged that, as the defendants in error acted *bona fide*, and under a written contract, and there has been a substantial benefit conferred on the owner of the premises, *ex œquo et bono*, he

ought to pay for such benefit, and that equity will interfere and sustain a lien for such improvements. To adopt the language of the counsel for the plaintiff in error, rent paid in improvements is no more sacred than rent paid in money. Certainly no recognized principle of equity can be pointed out supporting the proposition that because a tenant who has paid his rent in advance has been evicted by the wrongful act of his landlord he has a lien on the premises for the rent. If the contract had provided that Birdsall and Frantz were to pay $1,000 in money as rent in advance for the premises, which sum should be used by Paul Beck for the erection of the wooden building named in the lease, and after the rent had been paid, and the building erected by Beck, would it seriously be contended that the tenants had a lien on the premises for the rent so paid? Yet, as the construction of the building was the rent or recompense for the possession of such premises, it is immaterial whether in this case the tenants made the improvements themselves, or furnished the money to their landlord with which they were made. In neither case does any lien exist therefor solely in pursuance of the contract and possession, nor either. Assuming the contract made Birdsall and Frantz the sole owners of the wooden building erected by them, still such a construction would not confer any lien in their favor upon the lots on which the building was constructed, or authorize a lien on the lots to be foreclosed to pay for the cost of the same, notwithstanding a breach of the contract by Paul Beck. In view of the very broad and comprehensive provisions of our statutes relating to occupying claimants, and securing liens to mechanics and others, as well as the general policy of the real-estate law of Kansas to discountenance secret trusts, to require everything concerning the title to or rights in land to be in writing, and to simplify the means of securing liens, it is very questionable if any lien exists in this state upon real estate unsupported by either written agreement or statutory enactment.

But the defendants in error are not remediless. Paul Beck

is liable in damages. If he is execution-proof, then under proper legal proceedings Birdsall and Frantz could obtain possession again of the premises, and occupy them until the lease was fully complied with. A court of equity would "wipe out as with a sponge" the fraudulent judgment obtained, and all contracts and deeds made at the instance of Paul Beck to defraud his tenants and to further his tainted transactions. If the defendants in error cannot be fully compensated by other legal proceedings than the one instituted by them in the district court, and are the victims of the wrongful actions of a dishonest landlord, we are not justified, because their case is a hard one, in making the bad precedent that rent paid in advance, whether in cash, labor, material, or barter, is a lien upon the leased real estate for which the property at the instance of the tenant can be sold under a decree foreclosing the lien.

The conclusion of law of the court below was erroneous, and the judgment must be reversed, as the defendants in error had neither any statutory nor equitable lien capable of being enforced by an action. Upon the conclusions of fact found by the district court, the judgment below will be reversed, and the case remanded with instructions to enter judgment for costs in favor of Elizabeth Beck, the plaintiff in error.

All the Justices concurring.