---

(37 Misc. Rep. 536.)

### In re HENSHAW.

(Surrogate's Court, Kings County. March, 1902.)

1. ADMINISTRATION—CREDITORS—CONTINGENT DEBTS.

Where a lessor, since deceased, covenants to pay her lessee "for the building remaining on the premises at the expiration of the term," it does not make her a debtor to the lessee until the term has actually expired, and where she dies before that time the court has no authority on the judicial settlement of the accounts of her administrators to require them to retain in their hands the probable amount of their claim under Code Civ. Proc. § 2745, authorizing such act "where an admitted debt of the decedent is not yet due."

2. LEASE—COVENANTS OF LESSOR.

A covenant of a lessor to buy, at the termination of the lease, the buildings remaining on the premises, is personal to the lessor, and does not run with the land, nor bind her heirs or legatees.

Proceedings in the matter of the settlement of Cornelia M. Henshaw, executrix of Sarah Gracie, deceased. Decree of distribution entered.

Smith & Buxton (H. C. M. Ingraham and Edgar M. Doughty, of counsel), for petitioner.

Wilson & Wallis, for legatee Cornelia H. Sands.

Pearsall, Kapper & Pearsall, for legatee Fannie Lupton Shepperson.

George S. Ingraham, for Ovington Bros. Co.

CHURCH, S.  On the judicial settlement of this account objection is made to the decree providing for settlement and distribution on the part of certain persons by the name of Ovington, claiming to be creditors of the deceased.  The sole question is one of law, and arises from the following questions:  The deceased, in her lifetime, made a lease to the firm of Ovington Bros. of certain real estate in this state.  Said lease contained the following proviso:

"The party of the first part hereby agrees to pay for the buildings remaining on the premises at the expiration of the term hereby created.  The amount to be so paid by the party of the first part, unless otherwise agreed upon, shall be determined by arbitrators to be chosen as follows: The party of the first part shall choose one person, the parties of the second part a second, and the two so chosen shall choose a third, and the decision of such arbitrators shall be final and binding as to the amount to be paid."

This lease was executed in 1880, and was executed in pursuance of a proviso contained in a previous lease made by the testator's grantor, which gave to the Ovington Bros. the power of renewal, and also containing a similar covenant.  The building was destroyed by fire in 1883.  Thereupon an agreement was made between the decedent and Ovington Bros. extending the term of the lease until May 1, 1904.  After this extension had been given, the lessees, who owned premises adjoining the demised premises, erected a new building, which covered the entire property, there being no division line between the property of which the Ovington Bros. had the fee and that which they held by lease.  The Ovington Bros. have served a claim upon the executrix, stating that under this covenant in the lease the value of the buildings so erected is $40,000, and that there should be no distribution of the estate until the claim is paid, or sufficient money is set aside to pay same when it becomes due.  It appears that there is over $20,000 of personalty, and also about the same amount in real estate in the decedent's estate.  The Code provides, under certain circumstances, that the accounting party must retain in his hands the probable amount of a claim so as to protect a creditor.  The exact character of such claim, however, is as follows (section 2745):  "Where an admitted debt of the decedent is not yet due."  Then follows a provision as to the form of decree to make payment when the same becomes due.  This case is certainly not within the class of cases contemplated by the above section of the Code.  That section of the Code obviously was intended to apply to a present debt, the amount of which could not be disputed, but where, as stated in the Code, it was not yet due, and the debtor had a period of time within which to pay the same.  This manifestly was intended to apply to a case of a bond or note where the validity of the bond or note was not questioned, but where, by its terms, it could not be paid until some future date; but it is evident from the language of the section that at the time the matter

was presented to the court two facts must certainly appear, namely: First, that it was a debt; second, that the amount of it was admitted. The liability of the testator under the contract in question does not fall within this class of cases provided for by the Code. In the first place, it is not a debt. It is simply an executory contract, by which, at a certain time, the testator might have been liable to pay a certain amount to the lessees. Before the testator could have become liable to the lessees, it was necessary that there should be "buildings remaining on the premises at the expiration of the term," namely, May 1, 1904. It is entirely possible, and by no means improbable, that this building may, like its predecessor, be destroyed by fire between now and the 1st day of May, 1904; in fact, it might be destroyed by fire on the last day of the term. If this contingency should arise, absolutely no liability would attach to the testator or her estate, as there would be no buildings remaining on the premises for which she was liable to pay. The testator, therefore, is not indebted to the Ovington Bros. The mere fact that they have not disputed the contract does not make it an admitted claim within the language of this section.

The next question under consideration is: Was this a covenant running with the land, or is it a mere covenant of payment, upon which only a personal liability could be enforced against the covenantor? Upon this matter there is certainly nothing in the lease in question which, by any specific terms, provides that this shall be a covenant running with the land, or indicating any intention on the part of the lessee to do other than create a personal liability on the part of the lessor to pay for the value of these buildings. In the absence of any such express proviso, is there anything in the contract in question from which such an intention can be gathered? The general theory of contracts of character similar to this is that, where there is no specific provision making it a covenant running with the land, then it can be admitted as a personal covenant only. Spencer's Case, 5 Coke, 16; Tallman v. Coffin, 4 N. Y. 134. There is no doubt, from the entire tenor of this matter, that the parties did not intend to make this proviso in the lease otherwise than a personal covenant. It certainly will not be contended that the lessees get any greater rights against the testatrix's heirs at law and legatees by reason of the testatrix's death than they would have had against the testatrix if she had lived. If the testatrix lived, she certainly could have disposed of her real and personal estate by gift or otherwise, and they could not bring any action to restrain her from disposing of the same on the ground that at the expiration of their lease the lands or the property would be insufficient to pay the amount of money which she would be liable to pay under this covenant. I therefore see no reason why any decree should be entered herein which would result in preventing the settlement of this estate until the expiration of this lease, and until the measure of liability, if any, which the Ovingtons may have against the testatrix, shall be determined. It seems to me, therefore, unnecessary to consider the question as to whether the legacies provided for in the will are a charge upon the real estate or not. Let a decree be entered judicially settling the accounts as presented, and directing distribution.

Decreed accordingly.