# CHARLESTON.

MIAMI COOPERATIVE MINING CO., *A Corporation, v.* CHEROKEE COAL CO., *A Corporation.*

Submitted March 11, 1924.  Decided March 18, 1924.

LANDLORD AND TENANT.—*Lessee Not Authorized to Hold Possession of Property for Payment of Improvements Under Stipulation for Release on Bona Fide Sale.*

A lessee holding under a lease which stipulates that the term shall immediately terminate upon a *bona fide* sale of the property by lessor, and which also stipulates that if sale be made lessee shall be compensated for actual improvements placed on the property by agreement with the lessor, does not entitle the lessee to withhold possession of the property leased as against a *bona fide* purchaser thereof until payment be made for alleged improvements.

96 W. Va.

Error to Circuit Court, Kanawha County.

Action by the Miami Co-operative Mining Company against the Cherokee Coal Company. Judgment for defendant, and plaintiff brings error.

*Reversed; verdict set aside; new trial awarded.*

*Charles A. Showacre*, and *B. J. Pettigrew*, for plaintiff in error.

LIVELY, JUDGE:

. Miami Co-operative Mining Company, a corporation, instituted an action of unlawful detainer against Cherokee Coal Company, a corporation, for possession of a leasehold estate and coal mining operation thereon located near Miami in Kanawha county, before a justice of the peace, where, upon trial, judgment was rendered for plaintiff, afterwards appealed to the intermediate court of Kanawha county, where the case was tried before a jury which rendered a verdict for defendant in response to instructions which practically directed them to so find. The judgment was entered January 4, 1923, application made for a writ of error to the circuit court, which refused the writ, and this writ of error was obtained.

The transcript of the justice's docket does not show what defense was made or what issue was involved; neither does the proceedings in the intermediate court disclose that issue was made up. The jury was "sworn to try the issues joined between the parties and a true verdict render according to the evidence." What those issues were can only be surmised. We presume that defendant pleaded not guilty. It is error to try a case at law before a jury where there has been no joinder of issues or no plea filed by defendant. And this omission in the pleadings is not cured by swearing the jury to well and truly try the issues joined between the parties. *Del Carbo Coal & Coke Co.* v. *Cunninghame*, 93 W. Va. 12, 116 S. E. 719. However, this point is not raised by plaintiff in error. Possibly there was in fact an issue made up, and there is an omission from the record of that fact.

Plaintiff purchased a coal lease, mines and equipment from Miami Coal and Coke Company, a corporation. At the time of the purchase defendant was operating the property under a lease dated December 28, 1921, from the Miami Coal and Coke Company as lessor, to Lee Stone, the lessee. Defendant company was after that date incorporated, and Stone sold his lease to that company. The lease to Stone contemplated that he would form a company for its operation and that the lease would be assigned to that company. Defendant refused to give possession, claiming under this lease, and we gather from the testimony and the instructions given that its refusal to surrender possession of the property was predicated on a stipulation in the lease that the lessee should be compensated for such sums of money as were expended for improvements and for additional machinery and equipment such as mine cars, coal cutting machines and like implements. The material parts of the lease, so far as this controversy is concerned, are contained in paragraphs 5 and 6, which are:

"Fifth: Lessee agrees and covenants to take good care of the machinery, tools, equipment, and property leased hereby, and to make required repairs and replacements, and turn the same back to the lessor at the ending of this term in as good condition as it now is, less wear and tear occasioned by reasonable and proper use thereof. That he will pay taxes hereafter assessed against the said property, and keep the same insured against loss by fire in a replacement amount. And additional improvements made by the lessee shall be agreed to before being made, by the lessor; and any improvements placed on the property or additional machinery or equipment placed on the property shall not be removed therefrom without consent of the lessor."

"Sixth: It is understood and agreed that in the event the lessor shall make a bona fide sale of the said property hereby leased, then this lease shall immediately terminate, and likewise, in case the lessee shall purchase the said property. If sale is made by the lessor the lessee is to be compensated for such sums of money as he shall have expended for actual improvements, and for additional machinery and equipment, such as mine cars, coal cutting machines and like implements, the expense of upkeep and repairs and replacements of the mines, houses and other property to be calculated and taken as cost of coal and not additional improvements."

Stone took possession of the property upon execution of the lease, expended considerable money in repairing a portion of the tramroad which had been carried away by a slide, leading from one of the mines, and for other purposes in putting the mine in condition to be operated. About the middle of the summer of 1922 the defendant corporation having been formed, purchased the lease from him for a sum not divulged by the record, but which was evidently sufficient to reimburse him for his expenditures and possibly more. Defendant then operated the mine until October 6th, paying the stipulated royalties to the Miami Coal and Coke Company, the lessor, but ceased to pay any further sums after that date. In the meantime it had expended considerable money in and about the mine for its more efficient operation and claimed that for improvements, additional machinery and mine cars it had expended about $4,000. There is considerable confusion and controversy as to what defendant company actually did in the matter of development and improvements. It will be noted that under the 6th paragraph of the lease it is stipulated "that in the event the lessor shall make a *bona fide* sale of the said property hereby leased, then this lease shall immediately terminate, and likewise in case the lessee shall purchase the said property." That the sale made to plaintiff by the Miami Coal and Coke Company was a *bona fide* sale is not questioned. Plaintiff proved its *bona fide* purchase, and demand upon defendant for possession of the property. As above stated defendant defended its possession because it had not been paid for its alleged improvements, and considerable controversy arose over what those improvements were and their value. It also appears that defendant placed its alleged improvements and betterments upon the property without the lessor, Miami Coal and Coke Company, agreeing thereto, in violation of a stipulation in the fifth paragraph of the lease, above quoted. Plaintiff asked that the jury be instructed not to consider any evidence on behalf of defendant concerning its alleged improvements, because that was a matter of settlement and adjustment under the terms of the lease between its immediate lessor, the Miami Coal and Coke Company, and defendant, and that the only

question involved in the suit was the right to possession of the property. This instruction was refused, and the jury was instructed, at the instance of defendant, that plaintiff was not entitled to possession, and the lease was not terminated against the defendant unless the demand for possession was accompanied by payment or tender of payment by Miami Coal and Coke Company, or the plaintiff, to defendant, for compensation for any additional improvements, machinery or equipment which it had placed on the leasehold or in the mine, or had been placed there by Stone, up to the time of the sale of the property to the plaintiff; and if the jury believed from the evidence that such improvements, machinery or equipment were placed on the property or in the mines by Stone or the defendant during the time it was held by either of them, and that the same had not been paid for or tender of payment made to defendant by the plaintiff or its immediate lessor, the Miami Coal and Coke Company, before the suit was brought, then the jury should find for defendant. There was no evidence that either the Miami Coal and Coke Company or plaintiff had tendered payment for any of these alleged improvements before suit was brought; and the instructions were in effect instructions to find for defendant.

Do these instructions properly propound the law governing this case? The decided weight of authority is that a covenant on the part of a lessor that at the end of a term he will pay the lessee for improvements placed thereon by the latter is not a covenant that runs with the land and is not enforceable against a grantee of the lessor. *Tallman* v. *Coffin,* 4 N. Y. 134; *Hansen* v. *Meyer,* 81 Ill. 321; *Watson* v. *Gardner,* 119 Ill. 312; *Bream* v. *Dickerson,* 2 Humph. (Tenn.) 126. It has been decided in several cases that the right to compensation for improvements, being the result of express contract, the right to retain possession of the property could exist only by a stipulation to that effect. *Speers* v. *Flack,* 34 Mo. 101; *Swift* v. *Sheehy,* 88 Fed. 924. In 16 R. C. L. sec. 294, it is said:

> "As a general rule the agreement of the lessor to pay at the expiration of the lease for improvements erected by the lessee is considered to be a covenant,

the non-performance of which entitles the lessee or his
assignee to an action for damages, but nothing more,
though there is also authority to the effect that the
lessee may seek relief in equity as well as at law.  Ac-
cording to the better view where the lessee does not re-
serve the right to retain possession of the premises as
security for the performance of a covenant by the lessor
to pay for improvements erected by the lessee, during
the term, the lessee is not entitled to retain possession
after the expiration of the lease, for non-performance
of the covenant.''

If the lessee had expressly stipulated in the lease that he
would retain possession of the leased premises until his im-
provements should have been paid for, then there could be
no question about his right to hold either against the lessor
or his assigns.  *Jones* v. *Hoard,* 59 Ark. 42.  But that is not
the case here.  We find nothing in this lease which would
authorize defendant to retain possession of the leased premises
as security for the alleged improvements.  It is stipulated
that the lease shall be immediately at an end when a *bona fide*
sale is made.  There is a line of decisions, however, in which
the lessee has been protected in his possession until compen-
sation has been made for his improvements, although there
was no express language giving him such right, on the theory
that he has an equitable lien on the premises for the value of
his improvements and that equity will protect his possession
until payment therefor.  *Franklin Land Co.* v. *Card,* 84 Me.
528; *Mullen* v. *Pugh,* 16 Ind. App. 337; *Ecke* v. *Fetzer,* 65
Wis. 55; and *Haynes* v. *Union Investment Co.,* 35 Neb. 766.
In *Gardner* v. *Samuels,* 116 Cal. 84, the question we have here
was under consideration; and it was there held that in the
absence of an express agreement a tenant has no lien upon
leased lands for the value of the improvements placed there-
on, under an agreement that the landlord should pay for the
same at the expiration of the term.  Citing: *Hite* v. *Parks,* 2
Tenn. Ch. 375; *Taylor* v. *Baldwin,* 10 Barb. (N. Y.) 582;
*Coffin* v. *Tallman,* 8 N. Y. 465; *Beck* v. *Birdsall,* 19 Kan. 550.
It was said in that case that: ''Upon the breach of this agree-
ment the plaintiff had merely a right of action against
Samuels which was purely personal, and which was not as-

sumed by Morris when he subsequently became the owner of the land. Nor did the agreement of Samuels have the effect to give to plaintiff a lien upon the land for the security of this payment." The case of *Ecke* v. *Fetzer*, 69 Wis. 55, above cited, was referred to and discussed. In the Ecke case it appears that the purchaser of the reversionary interest in the lease had, during the continuance of the term of the lease, received rent from the lessee for the remainder of the term. This fact may have had some effect upon that decision which holds that the lessee had an equitable lien for his improvement which protected his possession at the end of the term.

Under the terms of this lease there is nothing which would indicate that defendant is entitled to possession of the premises until its claim for alleged improvements shall have been adjusted and paid either by the lessor or its vendee. There is no privity of contract between plaintiff and defendant. It may be said that plaintiff was charged with knowledge of the possession of defendant at the time it purchased the leasehold and charged with knowledge of the terms of the lease under which defendant was operating; but the lease does not make it incumbent upon the assigns of the lessor to pay for these alleged improvements. It seems to have been contemplated by the parties to the lease, the Miami Coal and Coke Company, and defendant, Cherokee Coal Company, that the former would pay the latter for improvements, if any, which were placed upon the freehold by the lessee, and with the assent of the lessor. It is apparent that the parties contemplated a sale which, if effected, immediately terminated the lease. A sale would be of little benefit to a purchaser unless he could obtain possession and get the benefit of his purchase. If the lessee desired to protect its possession and continue the lease for non-payment of its improvements put thereon under the terms of the lease, it should have so stipulated in the contract, and thus give notice to the purchaser that the lease would not be in fact terminated until payment for the improvements had been made. The controversy over defendant's claim for its alleged improvements is one which is peculiarly between it and its lessor. The lease provides that no improvements shall be placed on the lease by the

lessee without the consent of the lessor; furthermore, that the lessee should bring the mine up to a certain capacity (which appears not to have been done) and pay a minimum royalty; also to pay taxes, which appear not to have been paid. The Miami Coal and Coke Company, ultimately liable for payment of these alleged improvements, if they be successfully asserted, should have its day in court for the purpose of resisting this claim for improvements. All that is involved in this litigation is the right to possession; and as we have indicated the claim for improvements can not be successfully asserted against the right of possession under the terms of the lease.

It therefore follows that the instructions given for defendant were erroneous, and the judgment will be reversed, the verdict set aside and a new trial awarded.

*Reversed; verdict set aside; new trial awarded.*