[Civil No. 2738. Filed January 14, 1929.]

[273 Pac. 538.]

## M. W. BREWSTER–GREENE, Appellant, v. O. E. ROBINSON, Appellee.

Mr. W. E. Ferguson and Mr. J. H. White, for Appellant.

Mr. C. B. Wilson, and Mr. W. P. Geary, for Appellee.

ROSS, J.—This is the summary action of forcible detainer, brought by M. E. Brewster-Greene against O. E. Robinson for the possession of Hotel Holbrook, situated in the town of Holbrook, Arizona.

The defendant went into possession of the premises under a lease dated May 13, 1926, from the owner, M. A. Scott, who subsequently, on March 24, 1927, sold the premises to plaintiff, who bought with notice of the terms of the lease. The lease was for a term of five years from June 1, 1926, at a monthly rental of $200, payable on the first day of each and every month. Under the terms of the lease defendant agreed to purchase and did purchase from the lessor, Scott, for $3,500, "everything in the way of furniture, equipment, beds, bedding, and in fact all personal property therein," except certain articles selected therefrom by the lessor. In the lease was this stipulation:

"This lease is agreed to be subject to sale of the said premises at any and all times during the term thereof after the first year, . . . and if sale should be

made as hereinabove set forth, the first party agrees to repurchase personal property (furniture, equipment, etc.) herein sold to second party, at the price hereinafter set forth therefor, less a reasonable depreciation on the same.''

The lease also provided that the premises should be surrendered by lessee at the expiration of lease, ''and that in case of sale, she will also quit and surrender the said premises as hereinabove provided.''

The contract of sale of premises by Scott to plaintiff was dated March 24, 1927, and was for a consideration of $26,000, $2,500 payable on or before April 1 and $7,500 on or before August 1, 1927, and the balance on or before two years. The first two installments were promptly paid, this fact and others disclosing that the sale was a good-faith sale. The contract of sale from Scott to plaintiff provided that the latter should be entitled to the rent of premises beginning April 1, 1927, and the plaintiff accordingly demanded of defendant such rent and was paid the rent by defendant for April and May, 1927. Ten days, or more, before the first day of June, 1927, plaintiff made written demand for possession of premises on June 1st. The defendant refused to surrender possession, contending, as we understand, that she was entitled to remain in possession until the lessor or plaintiff repurchased from her the furniture and equipment, ''at the price hereinafter set forth therefor ($3,500), less a reasonable depreciation on the same.''

The plaintiff in his complaint, filed July 22, 1927, predicated his right to recover possession of premises upon two grounds: (1) The termination of the lease at the end of the first year, or on June 1, 1927, by reason of sale of the premises by the lessor, Scott, to the plaintiff, and defendant's agreement to quit and surrender premises ''in case of a sale''; and

(2) for failure to pay rent for the months of June and July.

While the present suit was pending, on, to wit, July 29, 1927, plaintiff and defendant met and undertook to compose their differences and accordingly entered into a written agreement stipulating, in effect, that plaintiff would waive all claim for damages by reason of defendant's holding over after June 1st, and dismiss suit, on condition that defendant would pay him rental for June and July, fixed at $360, said rental to be paid to the First National Bank of Holbrook to the credit of plaintiff, "to await further decision as to who is the lawful owner thereof." Then follows this provision:

"It being the intention of the parties hereto, upon the performance of the conditions hereinabove specially set forth, that no further demand shall exist at the date hereof or that has arisen because of any cause of action, claim or demand on the day hereof or prior hereto, providing the second party vacates the said premises not later than the first day of August, 1927, or upon payment to her on that date or thereafter of the sum of twenty five hundred dollars by the said M. A. Scott. . . . ''

This agreement was not carried out. The $360 rental was not paid to plaintiff, nor to the First National Bank of Holbrook to his credit, nor did lessor, Scott, pay to defendant $2,500, and the suit was not dismissed.

The defendant in her answer predicated her right to remain in possession after June 1st upon the provisions of the lease, contending that by its terms she was not to surrender possession until she was paid $2,500 for the furniture and equipment; and, further, that under the agreement of July 29th plaintiff agreed that defendant might hold possession until she was paid the $2,500 by lessor Scott.

Upon the issues thus formed the case was tried by the court with a jury, with the result of a verdict in favor of defendant, upon which judgment was entered. The plaintiff has appealed.

The first assignment is that the court erred in granting defendant's request for a jury trial because the request was not made at the time and in the manner provided by law. In forcible entry and detainer actions the plaintiff may have a jury trial if at the time summons is issued he requests it; if he does not request a jury, the defendant may do so when he appears. Par. 1533, Civ. Code 1913. If neither party asks for a jury, the jury is waived. But in this case plaintiff in his complaint demanded a jury and later waived it, and thereafter defendant requested a jury and was granted it. There was no occasion for the defendant to demand a jury when she originally appeared, because at that time the case stood as a jury case. When plaintiff withdrew his request, the defendant not consenting, the spirit of the law, if not its language, required that her request for a jury be granted. We do not think it was error to grant the request of defendant for a jury. The cases cited by counsel from this jurisdiction and others bear on the refusal of the court to grant the request for a jury when the jury has not been waived, and not upon the granting of the request, even though technically the party was in default in asking it.

But in this case, as we view it, there was nothing for a jury to pass upon. The salient or controlling facts appear from the pleadings, the lease, and the subsequent compromise agreement. The question to be decided was one of law and for the court. It involved the construction of the written evidence in the light of the conduct of the parties and the admitted facts.

One of the assignments is that the verdict and judgment are not supported by the evidence; and we think

it is well taken. As we construe the lease, defendant-lessee consented therein that a sale of the premises might be made and agreed to quit and surrender possession if they were sold after one year from the beginning of the lease. Her surrender of possession was not by that instrument made to depend upon the repurchase of the hotel equipment by the lessor, Scott, but upon a sale of the property. That there was a sale in fact the record leaves no doubt, and, at all events, the defendant is in no position to question the sale, because she, by paying rent to plaintiff for the months of April and May, estopped herself from denying plaintiff's title. By that act she accepted plaintiff as her landlord. Par. 4711, Civ. Code.

The agreement to repurchase the hotel equipment was Scott's personal obligation. If by the terms of the lease it had been provided that the lessor's assigns should be bound by the lessor's covenants, plaintiff as the assignee of the reversion would have been bound to repurchase the furniture (*Jones* v. *Hoard,* 59 Ark. 42, 43 Am. St. Rep. 17, 26 S. W. 193); but the lease contains no such provision. But had the terms of the lease bound the lessor and his assigns to repurchase the hotel equipment, the lessee would have no right to retain possession until such repurchase was consummated, unless such right was stipulated in the lease. We have found no case exactly in point, but it is a common thing, as we learn from the cases, to insert in leases a provision that the lessor will pay the lessee at the end of the term for improvements the latter may have placed on premises. In such cases it seems the decided weight of authority is that the covenant to pay for improvements is not a covenant that runs with the land. *Miami Co-operative Mining Co.* v. *Cherokee Coal Co.*, 96 W. Va. 11, 35 A. L. R. 514 and note, 122 S. E. 286. In 16 R. C. L. 798, section 294, it is said:

"As a general rule the agreement of the lessor to pay at the expiration of the lease for improvements erected by the lessee is considered to be a covenant, the nonperformance of which entitles the lessee or his assignee to an action for damages, but nothing more, though there is also authority to the effect that the lessee may seek relief in equity as well as at law. According to the better view where the lessee does not reserve the right to retain possession of the premises as security for the performance of a covenant by the lessor to pay for improvements erected by the lessee during the term, the lessee is not entitled to retain possession after the expiration of the lease, for non-performance of the covenant. The lessee may, however, expressly reserve by provision in the lease the right to retain possession of the leased premises as security for the performance of the lessor's covenant to pay for improvements."

If the covenant by the lessor to pay for improvements actually placed upon the premises does not run with the land, it would seem that an agreement to pay for personal property, such as the furnishings in a hotel, upon the termination of the lease, could by no rule be said to run with the land. That line of cases referred to in Ruling Case Law holding that lessee may retain possession until improvements are paid for does so on the theory that such lessee has an equitable mortgage lien on the premises for the value of such improvements, and that equity will protect his possession until they are paid for. *Miami Cooperative Mining Co.* v. *Cherokee Coal Co., supra.* But we believe in all such cases the improvements were of such a character as to form a part of the realty and permanently to enhance its value. Whether this rule or the majority rule is the correct one we need not determine in this case, since the property here agreed to be repurchased is not a part of the realty and could not be said to enhance its value.

However, in none of these cases where the tenant was permitted to remain in possession until improve-

ments were paid for was there an express .covenant to surrender possession in case of a sale, and in case of such an express covenant to surrender possession it would be contrary to the agreement of the parties to impress the realty with an equitable mortgage until improvements, even though a part of the realty, were paid for.

When, therefore, the compromise agreement of July 29th was entered into between plaintiff and defendant the former, under the terms of the lease, was entitled to the possession of premises, and, if he permitted defendant to retain possession, it was under an agreement that she should pay rent therefor. This agreement, even though it be construed as a consent by plaintiff that defendant might retain possession until Scott paid defendant $2,500 for hotel equipment, and that there was a consideration therefor, was not kept and performed by defendant. She did not pay the rent for June and July as therein agreed. It is true she undertook to pay such rent and to that end gave her check to plaintiff covering the rent for two months. She now contends that although she had no funds in the bank to meet the check that it was understood that said check was drawn against the $2,500 to be paid to her credit by Scott, and, since Scott failed to pay her, plaintiff under the contract should accept her check and wait for the money until Scott should pay her the $2,500. If such was the understanding it was contrary to the written agreement in which she bound herself to pay the rent to the bank, not out of a specific fund, but at all events. Besides, it seems improbable that plaintiff would have let the premises to defendant until some third party had paid the latter a sum of money for which the plaintiff was in no sense responsible.

As we construe the lease, plaintiff was entitled to the property and the rents, issues, and profits thereof,

when it was conveyed to him, or at least from the time defendant recognized him as her landlord, and, if there was an agreement by him to allow defendant to remain in possession until some third party discharged a duty or obligation owing to the defendant, it was without any consideration whatever and not binding upon plaintiff.

We have carefully examined the record in this case and are convinced therefrom that the plaintiff's contentions are well supported by both the law and the evidence, and that if any hardship results to the defendant in the holding that plaintiff is entitled to the possession of the premises, it is not the fault of the plaintiff, but of Scott, who, it appears, has failed and neglected to meet her obligation to repurchase the personal property, made "the bone of contention" in this lawsuit.

The judgment of the lower court is reversed and the cause remanded, with directions that judgment be entered for the plaintiff as prayed for in his complaint.

LOCKWOOD, C. J., and McALISTER, J., concur.